2020 UT App 134

# THE UTAH COURT OF APPEALS

KARLA MARTINEZ,
Appellant,
*v.*
JOHNNY DALE AND SHAMAN INC.,
Appellees.

Opinion
No. 20180160-CA
Filed October 1, 2020

Third District Court, Salt Lake Department
The Honorable Su Chon
No. 150907764

Daniel F. Bertch, Attorney for Appellant

Paul M. Belnap and John M. Zidow,
Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN FORSTER concurred in
the result in part I and concurred in parts II and III.
JUDGE JILL M. POHLMAN concurred in the result, with
opinion, in part I and concurred in parts II and III.

ORME, Judge:

¶1     Karla Martinez appeals the district court's summary judgment order dismissing her complaint seeking to impose Dramshop Act liability on Appellees for the death of her daughter. We reverse and remand for further proceedings.

## BACKGROUND[1]

### *The Accident*

¶2    In the early morning hours of July 7, 2014, Martinez's daughter (Daughter) was ejected from a vehicle near 500 South in North Salt Lake City. Prior to the accident, Daughter and a friend (Friend) had been drinking at a Salt Lake City bar. Daughter was unable to drive, so Friend decided to drive her home in Daughter's car. Friend lost control and rolled the vehicle, causing Daughter to be ejected. Daughter suffered serious injuries that left her hospitalized for over a month and eventually resulted in her death on January 3, 2015—several months after the hospital discharged her to at-home care. Friend was prosecuted criminally on charges arising from this incident.

### *The Complaints*

¶3    Relying on the Alcoholic Product Liability Act (the Dramshop Act), *see generally* Utah Code Ann. §§ 32B-15-101 to -302 (LexisNexis 2011), Martinez filed a complaint against Richard Noel d/b/a Bar-X on October 19, 2015.[2] At the time, Martinez believed that Daughter and Friend had been drinking at Bar-X. Martinez soon discovered, however, that they had instead been drinking at a nearby bar, Johnny's On Second, and not Bar-X. Martinez subsequently moved to amend her

---

1. "[W]hen reviewing a grant of summary judgment, we recite the disputed facts in a light most favorable to the nonmoving party." *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 5, 178 P.3d 343.

2. Martinez also named Friend as a defendant, but a settlement was reached and the district court dismissed her claims against him with prejudice.

complaint to name "Johnny Dale, an individual residing in Utah, d/b/a Johnny's on Second" as a defendant and to dismiss Bar-X from the suit. The district court granted the motion and "received" the amended complaint on June 23, 2016.[3] Martinez subsequently had a summons issued for April Dale, the registered agent for "Johnny Dale . . . d/b/a Johnny's on Second." The summons was then served on July 7, 2016, at April Dale's residential address and accepted by Johnny Dale.

¶4      Once again, however, Martinez failed to name the correct party in her complaint. Unbeknownst to Martinez, at the time she filed her first amended complaint, the true owner of the bar was Shaman, Inc., which did business as "Johnny's On Second," not Johnny Dale individually, although his ownership interest in Shaman is no secret. *See infra* note 8. On September 30, 2016, Martinez filed a second amended complaint naming "Johnny Dale . . . and/or Shaman, Inc., d/b/a Johnny's on Second." Shaman timely answered the complaint.

---

3. Appellees claim that this first amended complaint was not filed on June 23, 2016, because on September 28, 2016, the district court's clerk made a minute entry stating that "new parties will be entered in the registry after the filing of [t]he amended complaint (granted 6/23/2016)." But the court found this argument to be meritless, stating, "Ordinarily, when a party files a motion to amend, the Amended Complaint is then subsequently filed. It is very likely that the clerk did not see the text of the order [noting that the amended complaint had been 'received'] when the note was made. After the note was entered in the docket, a Second Amended Complaint was filed." Furthermore, while the court used the word "received" in its order, in context we understand the court to be saying that the first amended complaint was deemed filed on June 23, 2016.

*Summary Judgment*

¶5     The following August, Appellees moved for summary judgment, asserting that Martinez's claims were barred by the applicable statute of limitations because her first amended complaint was filed after July 7, 2016—the two-year anniversary of Daughter's accident. Appellees further argued that summary judgment was appropriate because Martinez was "precluded from presenting evidence of damages at trial due to her failure to make any disclosures required by Rule 26(a) of the Utah Rules of Civil Procedure." Martinez opposed summary judgment, arguing that she filed her first amended complaint naming Johnny Dale before July 7, 2016, and that the second amended complaint naming Shaman related back to this complaint. She claimed it related back because using "Johnny Dale d/b/a Johnny's on Second" instead of Shaman was a mere misnomer and that Shaman had sufficient notice of the action and would not be prejudiced by the relation back. Martinez further argued that under Utah Code section 78B-2-108, the statute of limitations was tolled until Daughter's death because Daughter was left mentally incapacitated as a result of her injuries.

¶6     The district court granted summary judgment to Appellees and dismissed the case. The court ruled that Martinez filed her second amended complaint after the statute of limitations had run and that it did not relate back to the first amended complaint. It determined that relation back would be improper because there was no "identity of interest" between Johnny Dale, who accepted the first amended complaint, and Shaman.

¶7     The court also ruled that the statute of limitations ran from the date of Daughter's injury and that it was not tolled by Daughter's alleged incapacity. The court concluded that because the information Martinez provided was "inconclusive as to whether or not [Daughter] was incompetent," it could not

determine "that her incompetence tolled the statute of limitations." Having granted the motion on these grounds, the district court declined to address Appellees' rule 26 argument. Martinez appeals.

ISSUES AND STANDARDS OF REVIEW

¶8 This appeal presents three issues. First, Martinez argues that the district court erred in ruling that her second amended complaint did not relate back to her first amended complaint and that the court applied the incorrect standard in so ruling. Second, Martinez contends that there was "at least a genuine issue of material fact regarding [Daughter's] 'mental incompetency'" and that the court therefore erred in ruling as a matter of law that the statute of limitations had not been tolled. Finally, Appellees assert that, even if we are otherwise inclined to reverse, the court's ruling can be upheld on grounds not reached by the court, namely that Martinez failed to make disclosures required by rule 26 of the Utah Rules of Civil Procedure and therefore that she "cannot make a *prima facie* case for dram shop liability at trial."

¶9 Concerning the first two issues, "[w]e review summary judgments for correctness, giving no deference to the trial court's decision." *Bahr v. Imus*, 2011 UT 19, ¶ 16, 250 P.3d 56. Even in fact-intensive cases, appellate courts make their "own decision on the correctness of summary judgment, reviewing the same paper record that was before the trial court to decide whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Id*. ¶ 17.

¶10 Concerning the third issue, "[i]nterpretation of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *Pete v. Youngblood*, 2006 UT App 303, ¶ 7, 141 P.3d 629. But "we grant district courts a great deal of deference in

matters of discovery." *Dahl v. Dahl*, 2015 UT 79, ¶ 63, 459 P.3d 276 (amended opinion).

ANALYSIS

I. Relation Back

¶11   Pursuant to the Dramshop Act's statute of limitations, Martinez was required to commence an action within two years of July 7, 2014—the date of Daughter's accident. *See* Utah Code Ann. § 32B-15-301(3) (LexisNexis 2011). While Martinez filed her first two complaints within the statute of limitations, she did not file her second amended complaint—in which she finally named Shaman, the correct party—until September 30, 2016. Martinez argues that under rule 15(c) of the Utah Rules of Civil Procedure, the district court erred in ruling that her second amended complaint did not relate back to her first amended complaint. We agree.

¶12   At the relevant time, rule 15(c) provided that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R. Civ. P. 15(c) (2015).[4] Although rule 15(c) at the time "did not expressly contemplate the substitution of parties," our Supreme Court

---

4. Rule 15(c) was amended effective November 1, 2016, but because "matters of procedure are governed by the law in effect at the time of the underlying procedural act," we apply rule 15(c) as it existed at the time Martinez filed her complaints. *See Howick v. Salt Lake City Corp.*, 2013 UT App 218, ¶ 38, 310 P.3d 1220 (quotation simplified).

recognized an exception to this rule when "it can be assumed or proved the relation back is not prejudicial."[5] *2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 19, 408 P.3d 313 (quotation simplified). This exception most often applies "in two types of cases: (1) in so called misnomer cases and (2) where there is a true identity of interest." *Ottens v. McNeil*, 2010 UT App 237, ¶ 43, 239 P.3d 308 (quotation simplified).

¶13 Misnomer cases are those where "the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect." *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 370 (Utah 1996) (quotation simplified). Generally, "if the body of the complaint correctly identifies the party, or if the proper person has actually been served with process, courts . . . will allow an amendment under rule 15 to correct technical defects in the caption." *Tan v. Ohio Cas. Ins. Co.*, 2007 UT App 93, ¶ 12, 157 P.3d 367 (quotation simplified).

¶14 Identity-of-interest cases are those where the intended party was not served, but service was effected on another who shared an "identity of interest" with the intended party so that the "real parties in interest would be sufficiently alerted to the proceedings so that no prejudice would result from a party's addition." *2010-1 RADC/CADC Venture*, 2017 UT 29, ¶ 19 (quotation simplified).

---

5. "[T]he current version of rule 15(c) expressly provides that an amended pleading that adds, substitutes, or changes the name of a party relates back to the date of the original pleading under certain circumstances." *2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 19 n.5, 408 P.3d 313. *See* Utah R. Civ. P. 15(c)(3) (2020).

¶15 Both situations are governed by rule 15(c) of the Utah Rules of Civil Procedure, with "the key inquiry center[ed] on whether the amendment will prejudice the nonmoving party." *Id.* ¶ 19 n.6. While the earlier version of rule 15(c) did not explicitly provide a time frame in which the correct party needed to receive notice of the action to not be prejudiced, Utah courts have generally followed the requirement of rule 15(c)(3) of the Federal Rules of Civil Procedure, pursuant to which the correct party must have received notice of the action within 120 days after the original complaint was filed. *See Tan*, 2007 UT App 93, ¶¶ 11–15.

¶16 Often, cases will cleanly fall into one of these categories. However, these two types of cases—misnomer and identity of interest—are not meant to be rigid pigeonholes in which a case may qualify for only one or the other. They are best understood as analytical tools to help courts determine whether allowing relation back will prejudice a party, which is the ultimate question under rule 15(c). *See* Utah. R. Civ. P. 15(c).

¶17 The present case could possibly fall under either type of case. It has elements of both but is not a classic example of either. It is, however, more akin to a misnomer case than an identity-of-interest case, as the proper party ended up with the summons and complaint, was provided notice before the statute of limitations had run, and appeared in and defended the action. *See Wilcox*, 911 P.2d at 370. *See also Penrose v. Ross*, 2003 UT App 157, ¶ 12, 71 P.3d 631 ("A misnomer is involved when the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect.") (quotation simplified).

¶18 When Martinez filed her first amended complaint, she had the summons issued to April Dale, who actually was the registered agent for Shaman, although service was recited as

being on April as agent for "Johnny Dale . . . d/b/a Johnny's on Second." Shaman's failure to object to improper service waived any future challenge as to whether this service was appropriate. *See* Utah R. Civ. P. 12(h). *See also State v. All Real Prop., Residence & Appurtenances*, 2005 UT 90, ¶ 8, 127 P.3d 693 ("[I]f a party fails to assert [an insufficient service] defense in the first responsive pleading or by a motion filed prior to the first responsive pleading, the defense is waived."). Thus, because Shaman appeared in the action and failed to raise this defense, it may be deemed to have been properly served through its registered agent, April Dale.[6]

¶19 At the time service was effected, Martinez was unaware that instead of naming "Johnny Dale . . . d/b/a Johnny's on Second" in her complaint, she should have named "Shaman, Inc., d/b/a Johnny's on Second." But April Dale was the registered agent for Shaman and presumably received the summons and complaint from Johnny Dale when it was left with Johnny at their residence.[7] Thus, Martinez's only error was a

---

6. April Dale is the registered agent for Shaman, which does business as "Johnny's On Second." Given the lack of a timely objection to the sufficiency of service of process, we have no occasion to consider whether service in accordance with rule 4(d)(1)(A) of the Utah Rules of Civil Procedure is an effective method of serving a registered agent, when a copy of the summons and complaint is left with "a person of suitable age and discretion who resides" at the registered agent's residence—in this case, none other than Johnny Dale. *See infra* note 7.

7. At one point the district court stated that no proof of this service was filed. It is clear in the record, however, that this first amended complaint was served. A copy of the proof of service was included in Appellees' reply memorandum in support of

(continued…)

technical one concerning the name of the entity that was doing business as "Johnny's On Second." But that entity's registered agent was served—or at least may properly be deemed to have been served. And the correct party, Shaman, received the summons and complaint following service on its registered agent. This is confirmed by the fact that Shaman's counsel emailed Martinez on August 8, 2016, informing her that she had made an error in captioning her complaint. Nonetheless, Shaman appeared and defended itself. And, via the second amended complaint, the caption was fixed.

¶20    Martinez always intended to sue a single party, that being whoever was responsible for the bar known as "Johnny's On Second," and she simply erred in naming the owner of the bar. *See Tan v. Ohio Cas. Ins. Co.*, 2007 UT App 93, ¶¶ 16–17, 157 P.3d 367 (holding that, among other reasons, an identity-of-interest analysis was not "applicable," although misnomer analysis was,

---

(…continued)

their motion for summary judgment. Additionally, during one hearing, Martinez represented to the court that service had been properly effected, and Appellees did not challenge the statement. Most importantly, Appellees did not assert insufficiency of service of process as a defense in their responsive pleadings, thereby waiving any argument of insufficient service of process. *See* Utah R. Civ. P. 12(h).

Whether service can be effected on an agent at the agent's residence by leaving the summons and complaint "with a person of suitable age and discretion," *see id.* R. 4(d)(1)(A), is an interesting question that arises from the acceptance of service by Johnny Dale for April Dale, the registered agent of Shaman. But because, as indicated, Appellees did not object to the alleged insufficient service of process, they waived this possible objection, and thus we need not further consider the question. *See id.* R. 12(h).

because "there was only one entity to sue," and plaintiff's initial complaint merely misnamed the defendant).

¶21 Having determined that Martinez's failure to properly name Shaman in her first amended complaint was a simple technical defect and that Shaman received the summons and complaint when it was presumably passed along by April Dale, it is unnecessary to undertake an identity-of-interest analysis between Johnny Dale and Shaman, although we suspect it would lead to the same conclusion.[8] We now turn to consider whether under rule 15(c) Martinez's second amended complaint, correcting the name of the entity responsible for Johnny's On Second, should be allowed to relate back.

¶22 First, for relation back to be appropriate, Martinez's second amended complaint must assert a claim that "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Utah R. Civ. P. 15(c)(2). Martinez's first amended complaint alleged Dramshop Act liability against "Johnny Dale . . . d/b/a Johnny's on Second" stemming from Daughter's July 7, 2014 car accident. And her second amended complaint alleged the same Dramshop Act liability arising from the same incident against "Johnny Dale . . . and/or Shaman, Inc.,

---

8. A simple public records search provides ample evidence that Johnny Dale is connected to Shaman in a very meaningful way. Those records show that in 2006 a John Dale, presumably Johnny Dale, signed an application for Johnny's On Second as the registered agent for Johnny's On Second and the owner of Shaman. In 2011, the registered agent was changed from John Dale to April Dale but was subsequently changed back to John Dale on July 7, 2018. This evidence was not in the record, and we do not rely on it as the basis for our opinion. Still, this publicly available information assures us that our opinion does not work a miscarriage of justice.

d/b/a Johnny's on Second." Thus, Martinez's second amended complaint satisfies this aspect of rule 15(c)(2).

¶23 Second, Shaman had to have received "sufficient notice of [Martinez's] action so that relation back is not prejudicial." *See 2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 19 n.6, 408 P.3d 313. Martinez filed her first amended complaint on June 23, 2016, and Shaman filed an answer on October 10, 2016, within the 120-day period. This demonstrates that Shaman had actual notice of the action within the 120-day period after Martinez filed her first amended complaint. *See Tan*, 2007 UT App 93, ¶¶ 11–15 (stating that a party "was not prejudiced by the correction in the amended complaint because it was served with the amended complaint within 120 days of the original filing date, as permitted by rule 4(b) of the Utah Rules of Civil Procedure, after the applicable statute of limitations had run"). Additionally, Shaman's counsel's email sent on August 8, 2016, informing Martinez of the incorrect name on the complaint, further shows that Shaman knew about the action well within the 120-day period.

¶24 In light of the fact that it had actual notice within 120 days of Martinez's first amended complaint, Shaman has not shown how it would be prejudiced in defending Martinez's Dramshop Act claim against it. Thus, the second amended complaint relates back to the first amended complaint because the error in naming the entity doing business as Johnny's On Second was simply "a technical defect in the naming or identification" of Shaman, *see Penrose v. Ross*, 2003 UT App 157, ¶ 12, 71 P.3d 631, and Shaman was "sufficiently alerted to the proceedings" within 120 days of Martinez's first amended complaint and would not be prejudiced by defending the action, *see Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 370 (Utah 1996) (quotation simplified).

II. Tolling of the Statute of Limitations

¶25    Having determined that relation back is proper and that the statute of limitations did not bar Martinez's second amended complaint, we do not necessarily need to consider whether Daughter's alleged mental incompetency tolled the statute of limitations. We think it best to reach this issue, however, because it provides an additional basis on which our reversal can be premised.

¶26    Martinez argues that the district court erred in rejecting her argument that the Dramshop Act's statute of limitations was tolled until Daughter's death on January 3, 2015, because Daughter was incompetent from the time of the accident up until her death. Utah Code section 78B-2-108 states that "[d]uring the time [a] person is . . . incompetent, the statute of limitations for a cause of action other than for the recovery of real property may not run." Utah Code Ann. § 78B-2-108 (LexisNexis 2011). Thus, Martinez contends that the Dramshop Act's statute of limitations expired on January 3, 2017—two years after Daughter's death— and she filed her second amended complaint well within that time frame, having filed it on September 30, 2016.

¶27    Our Supreme Court has held that section 78B-2-108 is intended "to relieve from the strict time restrictions people who are unable to protect their legal rights because of an *overall* inability to function in society." *O'Neal v. Division of Family Services*, 821 P.2d 1139, 1142 (Utah 1991) (emphasis added) (quotation otherwise simplified). To show this inability, it must be established that a plaintiff—or as here, a potential plaintiff— was "unable to manage [her] business affairs or estate, or to comprehend [her] legal rights or liabilities." *Id*. (quotation simplified). "Nonmedical evidence" in the form of affidavits from family members and friends attesting to an individual's "mental incompetency" may be considered in this analysis. *Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 36, 169 P.3d 441. "[E]xpert

testimony, medical records, and a medical diagnosis, while potentially helpful, are not necessary under the statute." *Id.* As such, "'mental incompetency' under section [78B-2-108] is a *legal* disability" that can be shown by lay affidavits. *Id*. (emphasis in original).

¶28    In *Ellis*, our Supreme Court held that lay affidavits from family members of Mrs. Ellis, attesting to her mental incompetence, "were sufficient to establish a genuine issue of material fact [to] send the matter to a jury" because the affidavits described Mrs. Ellis's "inability to take care of herself after the accident." *Id*. ¶ 32. This is not much different from the present case. Here, Martinez provided an affidavit stating that she had to stop working to care for Daughter, "had to supervise her 24/7," and was unable "to leave her at all without direct supervision." She also stated that after the tragic accident, Daughter "spoke and acted like a child," "was unable to hold a normal conversation," "was unable to handle interactions with other people," "was unable to leave the house by herself," was not capable of driving, and could not "handle" or "understand" her financial, medical, or legal affairs. This affidavit was "sufficient to establish a genuine issue of material fact," requiring "the matter to [be sent] to a jury," as it tends to show that Daughter had an *overall* inability to function in society. *See id.* ¶ 32.

¶29    The district court did not give Martinez's affidavit its due. Instead, it focused primarily on medical records, which it acknowledged it was unable to fully comprehend. The court ruled that because Daughter "understood that she had a legal case regarding the accident" and because she wanted to return to work and could "understand some things," it was "inconclusive as to whether or not [Daughter] was incompetent." On this basis, the court ruled against Martinez. But lack of conclusivity in the summary judgment context typically calls for later resolution by the fact finder—not making a decision as a matter of law. This case is no exception.

¶30 The court placed too much importance on Daughter's expressed understanding and desires, limited though they were. When dealing with mental incompetency under section 78B-2-108, the questions to be asked are whether the individual is *able* "to manage [her] business affairs or estate, or to *comprehend* [her] legal rights or liabilities." *O'Neal*, 821 P.2d at 1142 (emphasis added) (quotation otherwise simplified). The district court simply focused on Daughter's desire to go to work, not on her actual *ability* to return to work, and on her simple understanding that there was a "legal case," not on her ability to *comprehend* her "legal rights" and maximize her opportunity to have them vindicated. The court also indicated that "no doctor stated that she was incompetent." But as indicated, this was an incorrect basis on which to rule on Daughter's incompetency because, as our Supreme Court has held, one need not have a doctor opine on incompetency to toll the statute as it is a "*legal* disability" with which we are concerned, which does not present a purely medical question. *See Ellis*, 2007 UT 77, ¶ 36 (emphasis in original).

¶31 Ultimately, the district court did not properly analyze the evidence for purposes of summary judgment when it found a material fact to be "inconclusive" but nonetheless granted Appellees' motion for summary judgment. Instead, the inconclusive nature of the evidence precluded summary judgment, as the issue was legitimately in dispute because of Martinez's affidavit. Thus, reversal is also warranted on this basis, because of the existence of disputes of material fact concerning whether the statute should have been tolled as a result of Daughter's claimed incapacity between the time of the accident and her eventual death.

### III. Discovery Sanctions

¶32 Appellees assert that Martinez failed to make disclosures required by rule 26 of the Utah Rules of Civil Procedure and

"therefore cannot make a *prima facie* case for dram shop liability at trial," as rule 26 prohibited her from using the evidence she belatedly disclosed. While Appellees argued this in their motion for summary judgment, the district court declined to address the argument and, as explained above, granted the motion on other grounds. Appellees now ask us to affirm the district court's ruling on this unreached, alternative ground, which we could concededly do in an *appropriate* case. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("Appellate courts may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action.") (quotation simplified).

¶33   While Appellees are correct that Martinez did not serve her disclosures in a timely manner, we are disinclined to affirm the summary judgment against her on this basis. "Because trial courts must deal first hand with the parties and the discovery process," this is a classic call for the district court and a matter for its sound discretion. *See Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (quotation simplified). If the district court were to find here, as we think possible, that there was no real prejudice to Appellees as a result of Martinez's failure, it would not have to dismiss the complaint. Utah R. Civ. P. 26(d)(4) (Any "party [that] fails to disclose or to supplement timely a disclosure or response to discovery . . . may not use the undisclosed witness, document or material at any hearing or trial *unless the failure is harmless or the party shows good cause for the failure*.") (emphasis added).

¶34   Thus, we decline to affirm the district court's ruling on this unreached, alternative basis.

CONCLUSION

¶35    The district court erred in ruling that Martinez's second amended complaint did not relate back to her first amended complaint under the version of rule 15(c) of the Utah Rules of Civil Procedure in effect at the time. Furthermore, the court erred when it granted summary judgment in Appellees' favor when there was a genuine issue of material fact as to Daughter's incompetency tolling the statute of limitations. We therefore reverse and remand to the district court for trial or such other proceedings as may now be in order.

——————

POHLMAN, Judge (concurring):

¶36    I agree with the judgment of the court and with much of its analysis, but I write separately to identify a point of disagreement in Part I. Specifically, I agree with Judge Orme that the second amended complaint naming Shaman relates back to the first amended complaint naming Johnny Dale, but I disagree that the naming of Dale was akin to a misnomer.

¶37    "A misnomer is involved when the correct party was served so that the party before the court is the one plaintiff intended to sue, but the name or description of the party in the complaint is deficient in some respect." *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 370 (Utah 1996) (quotation simplified). That is not what happened here. When Martinez filed her first amended complaint, she named Johnny Dale, an individual. That was the person she intended to sue, and she did not make a technical mistake in naming him; rather, her mistake was a substantive one. She should have named Shaman Inc.—a different and distinct entity. And while it is true that Shaman "ended up with" the summons and complaint, the correct party was not served.

¶38   Despite my disagreement with Judge Orme's analysis on that point, I agree that rule 15(c) of the Utah Rules of Civil Procedure is satisfied here. I share his view that the misnomer and identity-of-interest tests "are not meant to be rigid pigeonholes in which a case may qualify for only one or the other." *Supra* ¶ 16. Instead, the "ultimate question" under rule 15(c) is whether "allowing relation back will prejudice a party." *Id.; see also 2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC,* 2017 UT 29, ¶ 19, 408 P.3d 313 (framing the relevant question as whether "the real parties in interest would be sufficiently alerted to the proceedings so that no prejudice would result from a party's addition" (quotation simplified)). And for all the reasons he identifies, I have no trouble concluding that in this case the answer to that question is no. *See supra* ¶ 23.

————