**2023 UT App 93**

# THE UTAH COURT OF APPEALS

JOHN MARTIN CARRELL,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20210145-CA
Filed August 24, 2023

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 190905374

Ann M. Taliaferro, Attorney for Appellant

Sean D. Reyes, Aaron G. Murphy, and Erin Riley,
Attorneys for Appellee

Staci A. Visser, Attorney for Amicus Curiae Utah
Association of Criminal Defense Lawyers

Jennifer Springer, Attorney for Amicus Curiae
Rocky Mountain Innocence Center

Debra M. Nelson and Benjamin Miller, Attorneys
for Amicus Curiae Utah Indigent
Appellate Defense Division

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

TENNEY, Judge:

¶1      For a period of about five years, John Carrell drove a school bus for children with disabilities. In 2014, Carrell was charged with sexually abusing one of the children who rode his bus, and charges were later added relating to a second child. A jury

convicted Carrell on a large number of counts, and those convictions were affirmed on direct appeal.

¶2   Acting pro se, Carrell filed a petition for postconviction relief. This was followed by an amended petition and then a second amended petition. During the pendency of the postconviction case, Carrell twice requested the appointment of counsel. The postconviction court denied both requests.

¶3   After briefing from both sides, the postconviction court granted the State's motion for summary judgment. With the assistance of new counsel, Carrell now appeals that decision. For the reasons set forth below, we affirm.

BACKGROUND

*Underlying Criminal Case*

¶4   The facts regarding Carrell's criminal convictions are set forth in *State v. Carrell*, 2018 UT App 21, 414 P.3d 1030, and we need provide only a brief summary here.

¶5   From 2009 through early 2014, Carrell drove a school bus for children with disabilities. Through an information filed in 2014 and an amended information filed in 2015, the State charged Carrell with 33 counts of aggravated sexual abuse of a child. The State alleged that Carrell sexually abused two children who rode his bus (both of whom were five years old at the time), and the State's allegations were at least partially corroborated by video footage taken from safety cameras that were operating inside the school bus.

¶6   Carrell retained private counsel to represent him. At the close of trial, the jury convicted Carrell on 19 counts—13 relating to the first victim and 6 relating to the second victim. Carrell appealed, and he was represented on appeal by the same attorney

that Carrell had retained to represent him at trial. In February 2018, this court affirmed Carrell's convictions, and the Utah Supreme Court later denied Carrell's request for a writ of certiorari.

*Postconviction Proceedings*

¶7 In July 2019, Carrell filed a timely pro se petition for relief under the Post-Conviction Remedies Act (the PCRA), and he filed an amended petition in September 2019 (the First Amended Petition). In the First Amended Petition, Carrell raised a number of ineffective assistance claims that fell into five broad groups—namely, that trial counsel (1) failed to adequately investigate the case, (2) failed to provide him with discovery, communicate with him, or prepare him for trial, (3) failed to call an expert witness, (4) failed to make certain objections, impeach certain witnesses, and make various arguments at trial, and (5) operated under an actual conflict of interest based on the deterioration of the attorney-client relationship.

¶8 The State entered its appearance in November 2019, and in January 2020, it filed a motion for summary judgment. The postconviction court then granted Carrell's request for an extension of time to respond to the State's motion, giving him until April 2020 to respond.

¶9 On April 9, 2020, Carrell filed a motion asking the court to appoint counsel. Carrell claimed that he could no longer afford to retain private counsel, and he then argued that he "was illegally convicted due to Ineffective Assistance of Counsel" and that he "should have the right to effective assistance of counsel due to the legal complexity of this issue." In a written response to this request, the State said that while it took "no position on whether the [c]ourt should appoint counsel," it noted that "although the PCRA permits the appointment of pro bono counsel for petitioners," "there is no Sixth Amendment right to effective assistance of counsel in a PCRA proceeding." Still purporting to

take no position on Carrell's request for counsel, the State also noted that Carrell had already drafted multiple petitions for postconviction relief "and numerous other motions, all of them exhibiting an understanding of the law."

¶10    The court denied Carrell's request for the appointment of counsel. It noted that under the PCRA provision governing the appointment of counsel, it was required to consider whether the petition "contains factual allegations that will require an evidentiary hearing" and "whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." *See* Utah Code § 78B-9-109(2) (2020). The court held that it was "satisfied, based upon the factual allegations in the petition, that an evidentiary hearing [was] not . . . required," explaining that the "events of the trial itself are a matter of record requiring no evidentiary hearing" and that as "to events that allegedly took place outside" of court, "no evidentiary hearing [was] necessary" for it "to apply the requisite, straight-forward *Strickland* analysis to trial counsel's performance." The court also concluded that "the issues presented in the petition are not complex and [Carrell] appears to be fully capable of presenting his claims in a clear and articulate manner."

¶11    On the same day that he filed his motion for the appointment of counsel, Carrell also filed a motion for leave to file a second amended petition, and this motion was accompanied by the proposed petition (the Second Amended Petition). The Second Amended Petition included all the claims that Carrell had raised in the First Amended Petition, and it now added five new claims. One of the new claims was that counsel was ineffective for failing to investigate the relationship between the first victim's family and Bikers Against Child Abuse (BACA), suggesting that such investigation might have provided some grounds to impeach the first victim at trial. The remaining four new claims alleged that Carrell's prior counsel was ineffective for not asking for various

jury instructions at trial, or, instead, for not raising these jury instruction issues on direct appeal (the Jury Instruction Claims).

¶12   Over the State's opposition, the court partially granted Carrell's request to file the Second Amended Petition. The court held that one of Carrell's Jury Instruction Claims—namely, a claim that was based on counsel's failure to request a unanimity instruction—was "futile" because the jury had been "polled when it entered its verdict" and "[e]ach jury member affirmed that he or she concurred in the verdict." Because of this, the court would not allow Carrell to add this particular claim. But the court did allow Carrell to file the Second Amended Petition with respect to the remaining added claims.[1]

¶13   In October 2020, the State filed a motion for summary judgment on the Second Amended Petition. There, the State argued that the Jury Instruction Claims (at least those that had survived the court's futility review) were "untimely and must be denied." The State laid out its view that Carrell was required to file his postconviction petition by October 5, 2019. The State argued that because the Second Amended Petition was filed on April 9, 2020, the Jury Instruction Claims were untimely, and it then argued that they did not qualify under the relation-back doctrine either. With respect to the remaining claims (the Non-Instruction Claims), the State asked the court to conclude that

---

1. At this point, the court had not ruled on the State's pending motion for summary judgment. In the same ruling in which it allowed Carrell to file the Second Amended Petition, however, the court suggested that the earlier motion for summary judgment remained "intact" and that if the State "opt[ed] to request summary judgment against the latest iteration of the petition in this case," it could "add new arguments as necessary to respond to [Carrell's] new claims."

Carrell had not shown that his counsel had performed deficiently or that he was prejudiced by the alleged deficient performance.

¶14 After the State filed this second motion for summary judgment, Carrell filed another motion asking the court to appoint counsel. Carrell argued that the "issues which were allowed to be added" to his Second Amended Petition "and the one issue which was denied are extremely, legally complex to [him]." He argued that he had "exhausted every resource available to him" and that "[d]ue to the lack, non-existence or denial of legal training, access to case law, legal research materials, a law library or legal counsel," it was "virtually impossible for [him] to properly adjudicate his petition." He further argued that he was prejudiced because the State had "nearly unlimited resources in legal training, law trained associates to collaborate with, case law resources, law libraries, access to the internet and support staff" and that it was "certainly not a level playing field."

¶15 In a response to this request, the State again claimed that it was taking "no official position on whether the [c]ourt should appoint counsel." But the State noted that "Carrell has already drafted most of his responses to the summary judgment motion because nearly all of his claims remain identical from the prior petition." The State also pointed out that the "only difference is the four new claims, which Mr. Carrell himself successfully argued for in his motion to amend his petition, which the State opposed," and it then asserted that "[a]bsent this matter proceeding to an evidentiary hearing[,] there is little counsel can do for Mr. Carrell at this point." Finally, the State informed the court that it would provide Carrell with printed copies of the legal authorities it had cited in its motion for summary judgment in an attempt to address Carrell's concern "about the volume of cases and statutes cited in the State's motion for summary judgment."

¶16 The court denied Carrell's second request for the appointment of counsel, expressing its view that it was "not

apparent that pro bono counsel should be appointed in this case, as the relevant facts and law are not unduly complicated" and that this was "particularly" so where the State had "voluntarily provided to [Carrell] copies of the case law and statute[s] cited" in its second motion for summary judgment.

¶17 Carrell subsequently filed a memorandum opposing the State's second motion for summary judgment, after which the court issued a written ruling granting the State's second motion.

¶18 In its ruling, the court first addressed the timeliness of the Jury Instruction Claims. After conducting an initial analysis of the filing dates and relevant limitations period, the court concluded that the original petition and the First Amended Petition were filed within the PCRA's one-year statute of limitations but that the Second Amended Petition was not.

¶19 The court then addressed the question of whether any of the claims raised in the Second Amended Petition related back to the claims that had been raised earlier. The court held that the new failure-to-investigate claim did relate back to the First Amended Petition and that it was therefore not barred by the statute of limitations. But in the court's view, the Jury Instruction Claims did not relate back. The court saw "no factual connection whatsoever" between the Jury Instruction Claims and the claims in the First Amended Petition, "all of which focused on discovery strategy, courtroom decorum, cross-examination technique, and admission of evidence." And the court also concluded that the Jury Instruction Claims did "not amplify or expand on any of [Carrell's] timely claims" and were "entirely disconnected from them." The court accordingly concluded that "the relation back doctrine [did] not protect them from the PCRA's one-year statute of limitations."

¶20 The court next addressed the State's request for summary judgment on the Non-Instruction Claims. Addressing the governing legal standard, the court held that Carrell was required

to (1) "bring forth admissible evidence proving that 'no competent attorney' would have so acted" and (2) "demonstrate an ability to prove that there was a reasonable likelihood of a more favorable outcome absent his trial counsel's deficient performance." (Citation omitted.) The court then expressed its view that Carrell had made "virtually no attempt to overcome summary judgment on anything but his untimely Jury Instruction Claims" and that his lack of meaningful response was "tantamount to a default on each of the counsel ineffectiveness claims."

¶21    But even so, the court proceeded to address Carrell's claims on their merits. In a portion of the ruling that spanned 20 pages, the court conducted a *Strickland* analysis for each claim. In each instance, the court concluded that Carrell had failed to establish either deficient performance or prejudice. With respect to prejudice, the court stressed that the "videos are what mattered in this case," and it then recounted in graphic detail the ways in which the videos corroborated the State's allegations against Carrell. Given the incriminatory strength of this video evidence, the court held that Carrell could not "establish prejudice" for "any" of his claims. For those reasons, the court granted the State's motion for summary judgment and denied Carrell's petition for postconviction relief.

¶22    New counsel then appeared on Carrell's behalf and filed a timely notice of appeal.

ISSUES AND STANDARDS OF REVIEW

¶23    Carrell argues that the postconviction court "both committed constitutional error and abused its discretion in declining to appoint counsel to aid Carrell in raising and litigating his post-conviction claims." To the extent that Carrell's argument is constitutional in nature, it's unpreserved. As a result, we review it for plain error. *See Salt Lake City v. Kidd*, 2019 UT 4, ¶ 31, 435

P.3d 248. To the extent that Carrell's argument is grounded in the PCRA, we review its "denial of a motion to appoint counsel . . . for an abuse of discretion." *Zaragoza v. State*, 2017 UT App 215, ¶ 14, 407 P.3d 1122.

¶24   Carrell next argues that the postconviction court erred in granting the State's motion for summary judgment. We review a court's "decision to grant summary judgment for correctness, granting no deference" to the decision. *Noor v. State*, 2019 UT 3, ¶ 18, 435 P.3d 221 (quotation simplified).

ANALYSIS

I. Appointment of Counsel

¶25   Carrell argues that when the postconviction court declined to appoint counsel, it (A) committed "constitutional error" and (B) "abused its discretion" under the PCRA. We disagree on both fronts.

A.     Constitutional Right to Counsel

¶26   Carrell argues that he was constitutionally entitled to counsel "in this collateral proceeding" because it "amount[ed] to the 'first review' of [ineffective assistance] claims of prior counsel who served as both trial and appellate counsel." But after the State argued in its responsive brief that Carrell never raised this below, Carrell simply took issue with the State's "attempt to move the standard of review from an abuse of discretion to one of plain error," while still pointing to no place below where he argued that the court was depriving him of his constitutional right to counsel. Having reviewed the record ourselves, we see no place where he raised this. We accordingly regard the issue as unpreserved.

¶27   Because of this, Carrell must establish that an exception to the preservation rule applies. *See Salt Lake City v. Kidd*, 2019 UT 4,

¶ 31, 435 P.3d 248 (holding that the preservation rule applies to every unpreserved claim, including those raising "constitutional questions, unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred" (quotation simplified)). To demonstrate plain error, Carrell must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Griffin*, 2016 UT 33, ¶ 17, 384 P.3d 186 (quotation simplified). And to show obviousness, Carrell must establish that "the law governing the error was clear or plainly settled at the time the alleged error was made." *State v. Garcia*, 2022 UT App 77, ¶ 47, 526 P.3d 1238 (quotation simplified), *cert. denied*, 525 P.3d 1260 (Utah 2022).

¶28 So viewed, Carrell has not established that the postconviction court committed any constitutional error, much less that it committed obvious constitutional error, when it denied his requests for the appointment of counsel. Carrell grounds his claim in the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The "Sixth Amendment right to counsel extends to a defendant's first appeal as of right" and "includes the right to state-paid counsel for indigent defendants." *Gailey v. State*, 2016 UT 35, ¶ 26, 379 P.3d 1278. It also provides that defendants "have the right to the effective assistance of counsel on direct appeal." *Id.* ¶ 27. But "[t]he same is not true under the PCRA." *State v. Nicholls*, 2017 UT App 60, ¶ 40, 397 P.3d 709. Instead, "[n]either the right to state-paid counsel nor the right to effective assistance of counsel is constitutionally or statutorily guaranteed in postconviction proceedings." *Gailey*, 2016 UT 35, ¶ 28; *see also Zaragoza v. State*, 2017 UT App 215, ¶ 17 n.4, 407 P.3d 1122 (noting that it is a "well-settled principle that there is no constitutionally or statutorily guaranteed right to counsel when defendants elect to pursue collateral attacks on their convictions"

(quotation simplified)); *Tillman v. State*, 2012 UT App 289, ¶ 22, 288 P.3d 318 (holding that "[u]nless a defendant has been sentenced to death, there is no statutory or constitutional right to counsel in a post-conviction proceeding" (quotation simplified)).

¶29   Pointing to *Martinez v. Ryan*, 566 U.S. 1 (2012), Carrell nevertheless claims that the United States Supreme Court has "recognized that the right to assistance of counsel attaches in the first review of an issue where that first review is the equivalent of the direct appeal as to the claim." Carrell then claims that because he had "the same counsel represent[]" him at trial and again on appeal, "the first and only opportunity for him to raise [ineffective assistance] claims was through the[] post-conviction proceedings." Turning back to *Martinez*, Carrell argues that it was constitutionally "necessary that counsel be appointed" in this postconviction proceeding.

¶30   But Carrell points to no clear or plainly settled authority applying *Martinez* in this manner. And for this reason alone, we could reject the claim for lack of obvious error. In any event, we see no basis for concluding that the postconviction court committed any *Martinez* error at all. In *Martinez*, the Supreme Court answered the question of "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." 566 U.S. at 9. The Court held that it can, but only in a somewhat narrow set of circumstances. *Id.* Specifically, *Martinez* arose out of a state (Arizona) where claims of ineffective assistance of trial counsel could only be brought by a petition for postconviction relief. *Id.* at 4. *Martinez* reasoned that in jurisdictions where the postconviction proceeding is the first proceeding in which the defendant can raise a claim of ineffective assistance of trial counsel, a federal habeas court may hear such claims if the defendant's ability to raise them in a postconviction petition was lost due to ineffective assistance of counsel. *Id.* at 13–14. But the Court stressed that its decision did not "resolve

whether that exception exists as a *constitutional* matter," but instead simply "recogniz[ed] a narrow exception" in cases of "*procedural default*." *Id.* at 9 (emphases added).

¶31 In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Supreme Court later expanded the *Martinez* rule to cover situations in which a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." But the Court again stressed that this rule is about the existence of an "exception" to the default rules in federal habeas. *See id.* at 423, 429.

¶32 In light of this, Carrell's *Martinez* claim fails for two reasons. First, *Martinez* wasn't answering a question about the constitutional right to counsel. Rather, it was answering a question about the availability of an exception to procedural default in federal habeas proceedings. Because of this, *Martinez* does not obviously establish that Carrell had a constitutional right to counsel in this proceeding. Second, even on its own terms, *Martinez* doesn't apply here because the framework that led to *Martinez* (one in which ineffective assistance can only be raised in a collateral proceeding) is not the framework used in Utah. To the contrary, "Utah allows claims for ineffective assistance of trial counsel on direct appeal." *Patterson v. State*, 2021 UT 52, ¶ 63, 504 P.3d 92. Indeed, the Tenth Circuit recently held that *Martinez* is inapplicable to claims arising out of Utah precisely because Utah "provides a meaningful opportunity to present ineffective assistance of trial counsel claims on direct appeal." *Finlayson v. State*, 6 F.4th 1235, 1243 (10th Cir. 2021).

¶33 Pushing back, Carrell claims that his case is different for one final reason. Carrell points out that he had the same counsel at both trial and on direct appeal, and from this, he claims that his "first opportunity to raise" his ineffective assistance claims was

"through PCRA proceedings." But while it's true that Carrell was represented by the same counsel at trial and again on direct appeal, we think it's significant that this was retained counsel. Thus, to the extent that it is true that this circumstance impaired counsel's ability to raise an ineffective assistance claim on direct appeal, that impairment was the result of Carrell's own choice to continue with the same retained counsel through the direct appeal.

¶34   True, a postconviction petitioner "is not procedurally barred from raising claims of ineffective assistance of counsel if the same counsel represented the petitioner at trial and on direct appeal." *Johnson v. State*, 2011 UT 59, ¶ 11, 267 P.3d 880. But even so, Carrell points to no authority, and we're aware of none, that clearly establishes that if a defendant chooses to retain the same counsel all the way through the direct appeal, this creates an affirmative constitutional right that wouldn't otherwise exist to now have counsel appointed for collateral review. Given that this is an unpreserved issue, it's therefore not "clear or plainly settled," *Garcia*, 2022 UT App 77, ¶ 47 (quotation simplified), that Carrell's choice to retain his counsel through the direct appeal created a constitutional right to counsel in the postconviction proceeding that wouldn't otherwise have existed. This claim fails.[2]

---

2. Carrell also suggests that the court violated his rights under the state constitution. But while Carrell makes a passing reference to Article 1, Section 12 of the Utah Constitution (which provides that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person and by counsel"), Carrell doesn't provide us with any authority that delineates the contours of this state constitutional right, nor does he make any argument unique to the state constitution. Without such argument or authority,

(continued…)

B.      Appointment of Counsel under the PCRA

¶35    Carrell next argues that the postconviction court should have appointed an attorney under the PCRA. We review the court's "denial of a motion to appoint counsel under the [PCRA] for an abuse of discretion." *Zaragoza*, 2017 UT App 215, ¶ 14. And "in this context, our supreme court has instructed" that a postconviction court "abuses its discretion only if its decision was beyond the limits of reasonability, an event which occurs when" the court "has taken actions that are inherently unfair or that no reasonable person would take." *Id.* ¶ 17 (quotation simplified).

¶36    This claim is statutory, so we begin with the text of the statute. And in doing so, we "apply the law in effect at the time of the occurrence regulated by that law." *State v. Wilkerson*, 2020 UT App 160, ¶ 24, 478 P.3d 1048 (quotation simplified). The version of the PCRA that existed at the time that Carrell requested counsel provided that "the court *may*, upon the request of an indigent petitioner, appoint counsel on a pro bono basis to represent the petitioner in the post-conviction court or on post-conviction appeal." Utah Code § 78B-9-109(1) (2020) (emphasis added).[3] "The plain, ordinary, and accepted meaning of the word *may* is permissive or discretionary, generally indicating that an individual is either permitted or has a possibility to do something." *State v. Diviney*, 2021 UT App 106, ¶ 22, 500 P.3d 883 (emphasis in original, quotation otherwise simplified), *cert. denied*, 505 P.3d 55 (Utah 2022). Since this statute uses the word "may," we have recognized that a postconviction "court enjoys wide

---

Carrell has not persuaded us that the postconviction court committed any obvious error under the state constitution.

3. This subsection has since been amended to include the possible appointment of counsel from the Indigent Appellate Defense Division. *See* Utah Code § 78B-9-109(1)(a) (2023).

latitude regarding whether to appoint counsel in a post-conviction case." *Zaragoza*, 2017 UT App 215, ¶ 17.

¶37 At the time, this statute also provided that "[i]n determining whether to appoint counsel, the court shall consider the following factors: (a) whether the petition or the appeal contains factual allegations that will require an evidentiary hearing; and (b) whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." Utah Code § 78B-9-109(2) (2020).[4] Interpreting this provision, we have recognized that a postconviction "court enjoys wide discretion over the ultimate decision about whether to appoint pro bono counsel in post-conviction cases," as long as the court, "in arriving at its decision, considers the factors that the statute requires it to consider." *Zaragoza*, 2017 UT App 215, ¶ 17.

¶38 As noted, the postconviction court denied Carrell's request for counsel on two occasions—once after the State filed its first motion for summary judgment, and again after the State filed its second motion for summary judgment. Carrell challenges both denials, but his arguments about each are largely similar.[5]

---

4. This subsection has since been amended to read: "In determining whether to appoint counsel, the court may consider: (a) whether the petitioner is incarcerated; (b) the likelihood that an evidentiary hearing will be necessary; (c) the likelihood that an investigation will be necessary; (d) the complexity of the factual and legal issues; and (e) any other factor relevant to the particular case." Utah Code § 78B-9-109(2) (2023).

5. Carrell raises one potential difference that warrants brief mention. Carrell agrees that the postconviction court did "consider the two requisite factors" with respect to its denial of his first motion, and our review of the ruling confirms this. With

(continued…)

¶39 Again, the evidentiary hearing factor looks to whether the petition "contains factual allegations that will require an evidentiary hearing." Utah Code § 78B-9-109(2) (2020). But rule 65C of the Utah Rules of Civil Procedure governs postconviction cases, and rule 65C(l) provides that "[a]fter pleadings are closed, the court shall promptly set the proceeding for a hearing *or otherwise* dispose of the case." (Emphasis added.) On its face, this contemplates that a postconviction court is not required to hold a hearing (evidentiary or otherwise) before ruling on a petition. *Cf. Moench v. State*, 2002 UT App 333, ¶ 14, 57 P.3d 1116 (remanding with directions to the postconviction court to hold a hearing on a petition for postconviction relief "if necessary"). And this allowance makes sense, particularly when the case involves (as most postconviction petitions do) a claim of ineffective assistance of counsel. The *Strickland* standard requires a showing of both

---

respect to the court's denial of the second motion, however, Carrell suggests that the court didn't "expressly" consider the factors. But Carrell doesn't directly argue that the second denial should not be given the deference that's ordinarily given to such rulings.

In any event, the statute required the court to "consider" the factors, but it didn't require the court to enter findings on them. *See id.* § 78B-9-109(2) (2020). When dealing with a similarly worded statute in the sentencing context, we presume that a court considered the statutorily required factors, thus placing the burden on the defendant to demonstrate that the court did not consider them. *See, e.g.*, *State v. Samul*, 2018 UT App 177, ¶ 21, 436 P.3d 298. Applying that same rubric here, we note that the court expressly considered the second factor. And while the court didn't refer to the first factor by name, it repeatedly referenced its denial of the earlier motion, thus suggesting that it was incorporating its previous analysis—an analysis that, again, expressly addressed this factor. In these circumstances, Carrell has not persuaded us that the court did not consider this factor or that its ruling should not be afforded the usual deference.

deficient performance and prejudice. So if the trial record itself shows that counsel's actions were reasonable, or if the record instead demonstrates that the petitioner was not prejudiced, no evidentiary hearing would be required before the court can resolve the claim.

¶40    Here, the postconviction court concluded that it was "satisfied, based upon the factual allegations in the petition, that an evidentiary hearing [was] not . . . required" on Carrell's claims because the "events of the trial itself are a matter of record requiring no evidentiary hearing," and that with respect to the claims stemming from "events that allegedly took place outside" of court, "no evidentiary hearing [was] necessary" for it "to apply the requisite, straight-forward *Strickland* analysis to trial counsel's performance." The same judge who was presiding over Carrell's postconviction case had also presided over Carrell's trial, so he was familiar with the evidence presented at trial. And while Carrell focuses on the court's denial of his request for counsel, Carrell hasn't adequately briefed the contours of a court's discretion to deny a petition without holding an evidentiary hearing, let alone persuaded us that the court could not grant the State's motions for summary judgment without first doing so. Because of that, Carrell has not convinced us that the court's analysis of this factor was "beyond the limits of reasonability" or "inherently unfair." *Zaragoza*, 2017 UT App 215, ¶ 19 (quotation simplified).

¶41    This leaves the second factor, which turns on "whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." Utah Code § 78B-9-109(2) (2020). On this, the postconviction court noted in its first denial that "the issues presented in the petition are not complex and [Carrell] appears to be fully capable of presenting his claims in a clear and articulate matter." And in its second denial, it ruled that, again, "the relevant facts and law are not

unduly complicated" and, as a result, it was "not apparent that pro bono counsel should be appointed in [Carrell's] case."

¶42    In response, Carrell points out that ineffective assistance claims are "complex," and he likewise points out that the PCRA is "filled with statutory rules and procedural minefields." Both things are true. Carrell further points out that the State is typically represented in such cases by attorneys who are well versed in the law in general and the PCRA in particular, while postconviction petitions are often filed pro se by incarcerated individuals who are working with either the resources available through the prison library or with the prison's contract attorneys. These things seem true too. Finally, Carrell correctly points out that at the time of both of his requests for counsel, the State had filed summary judgment motions. But from all this, Carrell suggested at oral argument that "once the State files [a] motion for summary judgment," a court must now grant a request for counsel to allow the petitioner to meaningfully respond to that motion. We part ways with Carrell here.

¶43    The things that Carrell is pointing to—the legal complexity of an ineffective assistance claim, the procedural hurdles posed by the PCRA, the litigation advantages enjoyed by the State, and the possibility of a summary judgment motion—all exist in virtually every postconviction case. Yet if the legislature believed that the collective complexity caused by these things means that a postconviction petitioner must be provided with counsel (either initially or at least upon the filing of a summary judgment motion), the legislature would have written a statute under which the appointment of counsel is at some point mandatory. But the legislature didn't. Instead, it wrote a statute under which the appointment of counsel in a postconviction case is discretionary, and it placed no limitation on that discretion that would automatically be triggered by any particular motion or procedural hurdle.

¶44 This isn't to say that a postconviction court can't choose to appoint counsel anyway. Since a court has discretion to deny a request for counsel, it of course also has discretion to grant one, and we express no view here as to whether a postconviction court should (or should not) ordinarily grant such a request. But since the legislature has seen fit to place this decision in the hands of the postconviction courts, the question before us is simply whether this court abused its discretion in this case. Carrell's arguments on appeal were largely systemic, however, and he hasn't persuaded us that there was anything so complicated about this petition or this case that it would have been "beyond the limits of reasonability" or "inherently unfair" for the court to deny his request for counsel. *Zaragoza*, 2017 UT App 215, ¶ 19 (quotation simplified). We accordingly reject this claim.

## II. Summary Judgment

¶45 Separate from the appointment of counsel issues, Carrell argues that the "post-conviction court erred in granting the State's Motion for Summary Judgment." This is so, he claims, with respect to both (A) the Jury Instruction Claims and (B) the Non-Instruction Claims. We disagree.

### A. The Jury Instruction Claims

¶46 As noted, Carrell first raised the Jury Instruction Claims in his Second Amended Petition, and the postconviction court denied them as being untimely. Carrell now challenges that ruling on appeal. While Carrell agrees that the Second Amended Petition was filed "six months after the limitations period expired," he argues that these claims "relate back to claims asserted in the earlier, timely, first-amended petition." We disagree.[6]

---

6. The postconviction court initially dismissed one of the Jury Instruction Claims (specifically, the claim that counsel was

(continued…)

¶47 Our supreme court has held that "PCRA petitions are governed by rule 15 of the Utah Rules of Civil Procedure," including "rule 15(c)'s relation-back test." *Noor v. State*, 2019 UT 3, ¶¶ 26, 35, 435 P.3d 221. The relation-back test generally provides that "when a new claim relates back to the date of the original pleading, a party may include it even when the statute of limitations has otherwise run on that claim." *Id.* ¶ 38 (quotation simplified). In the part relevant here, the governing rule states that the relation-back test applies when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Utah R. Civ. P. 15(c)(2). Thus, the "proper test" is

---

ineffective for not requesting an instruction on the unanimous verdict requirement) based on the court's conclusion that it was futile. Carrell challenges this futility ruling on appeal, but we need not address this argument because of our conclusion that, like the other Jury Instruction Claims, it was untimely filed.

In addition, Carrell alternatively argues that "State action prevented Carrell from timely filing" the Second Amended Petition, thereby tolling the PCRA's statute of limitations. But Carrell acknowledges that he didn't raise this argument below. As a result, this claim is unpreserved and Carrell must establish plain error to prevail. *See Salt Lake City v. Kidd*, 2019 UT 4, ¶ 31, 435 P.3d 248. He hasn't. This claim is based on Carrell's assertion that the impediments associated with his incarceration "prevented [him] from filing the amended claims any sooner." But Carrell doesn't explain with any specificity what those impediments actually were, nor does he explain how they stopped him from timely filing the Second Amended Petition even though they didn't stop him from timely filing his earlier petitions. Carrell also points to no settled authority holding that the usual impediments of incarceration toll the PCRA's statute of limitations. We accordingly see no basis for concluding that the postconviction court plainly erred by not sua sponte recognizing that the statute of limitations had been tolled.

"whether, under a liberal reading, the amended pleading imports a new and different cause of action or whether the amended pleading merely expands or modifies the same causes of action originally pled." *Noor*, 2019 UT 3, ¶ 37 (quotation simplified). And an amendment "arises out of the same conduct, transaction, or occurrence when it arises out of the same cause of action and alleges the same kind of factual basis as the original allegation." *Id.* ¶ 47 (quotation simplified).

¶48 The postconviction court concluded that the Jury Instruction Claims had "no factual connection whatsoever" to the claims in the First Amended Petition, did "not amplify or expand on any of [Carrell's] timely claims," and were "entirely disconnected from them."[7] And for good reason. In his earlier petition, Carrell claimed that he received ineffective assistance when his trial counsel (1) failed to adequately investigate the case, (2) failed to provide him with discovery, communicate with him, or prepare him for trial, (3) failed to call an expert witness, (4) failed to make certain objections, impeach certain witnesses, and make various arguments at trial, and (5) operated under an actual conflict of interest. But nowhere in his First Amended Petition did Carrell make any claim regarding counsel's failure to request any jury instructions.[8]

---

7. As noted, the postconviction court had earlier dismissed one of the Jury Instruction Claims on futility grounds, but these conclusions would apply with equal force to that particular claim too.

8. As noted, the test set forth in rule 15(c)(2) asks whether the new claims relate back to claims set forth in the "original pleading." Here, however, the court focused its analysis on whether the claims Carrell raised in the Second Amended Petition related back to the claims he raised in his First Amended Petition (as opposed

(continued…)

¶49    Even so, Carrell claims that what matters is that he made ineffective assistance of counsel claims in his First Amended Petition. In his view, his Second Amended Petition "simply expanded a category of claims found in the original timely petition—counsel failed to pose objections (here, to incomplete instructions to the jury) and counsel failed to make beneficial arguments to the benefit of his client (here, to uphold the defendant's constitutional right to a unanimous verdict)." But while it's true that Carrell's earlier petition must be given "a liberal reading," *id.* ¶ 37, Carrell's argument operates at a level of generality that is at odds with settled principles regarding this rule.

¶50    Carrell's focus is on the fact that all of his claims were ineffective assistance claims. But in theory, a defendant could claim ineffective assistance with respect to virtually any decision or action during the lifespan of a case, ranging from the initial investigation to trial to sentencing. If it were true that a postconviction petitioner who asserted ineffective assistance in a timely-filed original petition could then amend the petition to add any other ineffective assistance claim, there wouldn't be much left of the PCRA's statute of limitations.

¶51    In *Noor*, however, our supreme court rejected such a broad interpretation of rule 15(c), holding that the existence of a common cause of action alone isn't enough. *Id.* ¶ 48. The court explained that for the relation-back test to apply, the "cause of action or claim asserted must generally be the same in both

_____

to his original petition). Neither party has argued that the court could not base its analysis on the First Amended Petition. In any event, we have applied this doctrine in past cases to situations like this one, where an untimely second amended petition (arguably) related back to a timely filed first amended petition. *See, e.g., Martinez v. Dale*, 2020 UT App 134, ¶ 23, 476 P.3d 136; *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1260 (Utah Ct. App. 1996).

pleadings, *and* the issue presented in the amendment must factually relate to the issue presented in the first pleading." *Id.* ¶ 47 (emphasis added). Thus, even if a petitioner has asserted ineffective assistance claims in both the original and amended petitions, to obtain the benefit of this rule, the petitioner "must *also* show that his amendment may be reasonably construed as an expansion or modification of the original claim brought." *Id.* ¶ 49 (emphasis added); *see also id.* ¶ 40 (explaining that the relation-back test applies when the amendment "expands or amplifies what is alleged in the original" petition (quotation simplified)).

¶52   Again, Carrell raised a number of ineffective assistance claims in his earlier petition. But none of Carrell's claims had anything to do with the jury instructions that the court gave or didn't give at trial. Because of this, when Carrell later filed the Second Amended Petition that raised jury instruction claims for the first time, these new claims were not an "expansion," "modification," or "amplification" of Carrell's old claims, nor were they grounded in the same facts. *Id.* ¶¶ 40–41, 49 (quotation simplified). Rather, these claims were based on new procedural facts and new "occurrence[s]" entirely. *Id.* ¶ 42.

¶53   Because of this, the postconviction court correctly concluded that Carrell's Jury Instruction Claims were untimely. As a result, those claims were properly denied.

B.   The Non-Instruction Claims

¶54   This leaves the remaining claims which, unlike the Jury Instruction Claims, were timely filed. As noted, the court reached the merits of these claims and granted the State's motion for summary judgment on them.

¶55   Carrell argues that the court erred in doing so, and Carrell focuses his attention on the court's conclusion that trial counsel did not perform deficiently. Supported by amici, Carrell argues

that the court's deficient performance analysis was based on a misapplication of the Supreme Court's decision in *Premo v. Moore*, 562 U.S. 115 (2011).

¶56    But to prevail on his ineffective assistance claims, Carrell was required to establish both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871. A failure to establish either prong would be fatal to any of his claims, and a court (whether it be the postconviction court or this court) can decide any of them on prejudice alone. *See, e.g., State v. Hurwitz*, 2021 UT App 112, ¶ 21, 500 P.3d 921 ("Because both prongs of the *Strickland* test must be met to establish ineffective assistance of counsel, we need not address both prongs if a defendant's claim clearly fails on one of them." (quotation simplified)); *State v. Darnstaedt*, 2021 UT App 19, ¶ 24, 483 P.3d 71 ("Because a defendant must establish both [prongs], we often skip the question of deficient performance when a defendant cannot show prejudice." (quotation simplified)), *cert. denied*, 496 P.3d 716 (Utah 2021); *State v. Curtis*, 2013 UT App 287, ¶ 34, 317 P.3d 968 ("Appellate courts may resolve an ineffective assistance claim on prejudice alone if the ineffectiveness did not prejudice the trial's outcome." (quotation simplified)).

¶57    In its ruling, the postconviction court conducted claim-specific analyses of each of Carrell's claims and concluded that Carrell had not established deficient performance or prejudice for any of them. But Carrell has not challenged the prejudice portions of the court's ruling. And Utah appellate courts will not reverse a ruling of the lower court "that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Howick v. Salt Lake City Corp.*, 2018 UT 20, ¶ 5, 424 P.3d 841 (quotation simplified). Here, the court's prejudice rulings operated as independent bases for granting the State's request for summary judgment. Carrell's failure to challenge them leaves those bases untouched. As a result, we have

no basis for reversing the court's decision to grant summary judgment on any of the Non-Instruction Claims.

CONCLUSION

¶58 The postconviction court did not commit plain error when it denied Carrell's requests for the appointment of counsel, nor did it abuse its discretion under the PCRA by doing so. The court also did not err in granting the State's request for summary judgment.

¶59 The judgment of the postconviction court is therefore affirmed.

_____