**2021 UT App 114**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TERRY WAYNE WASHINGTON,
Appellant.

Opinion
No. 20200209-CA
Filed November 4, 2021

Fifth District Court, Cedar City Department
The Honorable Keith C. Barnes
No. 181500792

Keith A. Fitzgerald, Attorney for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1     Terry Wayne Washington lured Tiana[1] into his home with
an offer of employment. Washington attempted to change the
terms of employment to include sex, but he soon discovered not
only would $200 be too little to persuade Tiana to have sex with
him on this occasion, but $1,000 a month for monthly sex would
not be enough either—the offer did not matter because Tiana
"was not that kind of person." Washington, not to be denied,
then hugged Tiana and did not let go. Instead, he held her
shoulders, insisted sex would happen, and tried to throw her
onto a bed. Despite Washington's efforts, Tiana escaped. After a

---

1. A pseudonym.

bench trial, Washington was convicted of both sexual solicitation and attempted rape. Washington appeals and we affirm.

BACKGROUND[2]

¶2      Money was tight for Tiana's family. So, when she received an opportunity to assist her husband's boss, Washington, with a cleaning job, Tiana agreed to do it.

¶3      When Washington picked her up, she assumed they would go straight to the jobsite. She was therefore surprised when Washington drove her to his house instead. But she guessed Washington needed to pick something up, and seeing Washington's wife's blue car in the driveway, she agreed to go inside, thinking she would say hello. Once inside, Tiana observed that the house appeared deserted. At Washington's request, Tiana followed him down the back hallway to a bedroom, and she watched from the doorway as he pulled money from a vanity. With $200 in hand, Washington then informed Tiana that there was no cleaning job and that he would pay her for letting him "make it with [her]." When Tiana expressed confusion about what that phrase meant, Washington clarified that he wanted to pay her to have sex. After Tiana refused, he raised the offer to $1,000 per month for monthly sex, and Tiana again rejected the offer.

¶4      After asking her to keep the proposition a secret, Washington leaned in for what Tiana understood to be a "no hard feelings hug." But when the hug should have ended, it

---

2. "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the [district] court's findings; we present additional evidence only as necessary to understand the issues on appeal." *State v. Jack*, 2018 UT App 18, n.2, 414 P.3d 1063.

didn't. Washington did not let go. Instead, he "looked [her] in [her] eyes" and, as if there was "no other choice," he said, "I'm going to make it with you." Washington then gripped her shoulders, as well as her sweatshirt, and turned, trying to throw her onto the bed, but Tiana struggled free from her sweatshirt and left it in Washington's grasp. Tiana then ran, and Washington, in hot pursuit, "[threw] himself towards the [front] door" to block her path but "[fell] into the wall instead." Despite Washington's efforts, Tiana escaped from the house and ran to the nearest neighbor, screaming that Washington was trying to rape her.

¶5     When police later searched Washington's house pursuant to a warrant, they found Tiana's sweatshirt and phone still inside. Subsequently, the State took Washington into custody and charged him with two crimes: sexual solicitation and attempted rape. But before trial, Washington's competency became an issue. Washington told his attorney that he had been "hearing voices and hallucinating." Defense counsel further reported that Washington displayed "behavior consistent with disorientation and confusion" and that he "appeared unable to assist in his own defense or understand the proceedings against him." The district court therefore ordered a competency evaluation. Ultimately, the court received two competency evaluations, one finding Washington competent and the other finding him incompetent, but likely that he could be restored to competency.[3]     Then,     at     a     competency     review     hearing,

---

3. We are sensitive to the confidentiality surrounding mental health   records,   but   Washington   raises   an   issue   on appeal regarding the existence of two conflicting competency reports. Because our resolution of the issue does not require us to   delve   into   the   details   of   these   reports,   however,   we acknowledge their existence, but do not disclose the reports' contents. *See infra* note 5.

Washington agreed with defense counsel's representations that he understood the charges against him, and defense counsel stipulated to Washington's competency based on one of the competency reports. The district court, for its part, "accept[ed] the findings from" that competency report. And when Washington waived his right to a jury trial, the court set the matter for a bench trial.

¶6     During the trial, Tiana testified about the attempted rape as described above. And after the State rested its case, defense counsel moved for a directed verdict on the attempted rape charge, contending that the evidence presented was insufficient to support the "substantial step" element of that charge. *See infra* ¶¶ 10–11. The court deferred ruling on the directed verdict motion, heard closing arguments, and rendered its verdict at a later proceeding. In denying the motion and simultaneously rendering a verdict, the district court determined that Washington's grabbing Tiana's shoulders to prevent her from leaving the room—along with his statement that he was "going to make it with" her—"showed there was additional preventive action that constituted a substantial step . . . taken to commit the crime charged." And "[t]he fact that major steps still remained before the crime of rape could be completed [did] not preclude the [c]ourt from finding that the [steps Washington] already took were substantial." Thus, the district court found that "the evidence establishe[d] beyond a reasonable doubt that [Washington] took a substantial step in committing the crime of rape."

¶7     In the end, the court found Washington guilty of both charges. Washington appeals.


ISSUES AND STANDARDS OF REVIEW

¶8     Washington raises two issues for our review. First, Washington claims that the evidence was insufficient to support

a conviction on the attempted rape charge. He advances this argument in two separate ways: (a) he contends that the district court erred in denying his motion for a directed verdict on the charge for attempted rape and (b) he contends that the court erred by finding him guilty on that count after the bench trial. While these challenges raise the same underlying issue, they involve different standards of review. "We review the district court's denial of a motion for directed verdict for correctness"; and where a defendant "challenges the denial of a motion for a directed verdict based on the sufficiency of the evidence, the applicable standard of review is highly deferential," and "we will uphold the district court's denial if, when viewed in the light most favorable to the State, some evidence exists from which . . . the elements of the crime [could be] proven beyond a reasonable doubt." *State v. Barner*, 2020 UT App 68, ¶ 9, 464 P.3d 190 (cleaned up). But "when reviewing a bench trial for sufficiency of the evidence," our review is less deferential, and we "sustain the district court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501 (cleaned up). We need not, however, concern ourselves here with both standards of review because, for the reasons discussed below, we conclude that the district court did not err in finding Washington guilty after a bench trial. That is, our conclusion under the less deferential standard—that sufficient evidence existed to support the guilty verdict—necessarily requires that we affirm a denial of a motion for a directed verdict under the more deferential standard. Accordingly, as the end result is the same in both instances, we address only the argument that involves the less deferential standard of review.

¶9     Second, Washington contends that defense counsel rendered ineffective assistance in stipulating to his competency

in light of the conflicting competency reports.[4] "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Bowen*, 2019 UT App 163, ¶ 15, 451 P.3d 1050 (cleaned up).

## ANALYSIS

### I. Sufficiency of the Evidence

¶10     First, Washington contends that the district court erred in finding him guilty on the attempted rape charge, asserting that the evidence was insufficient to support the verdict. Specifically, he asserts that the evidence could not support the "substantial step" element of the attempted rape charge; that is, he claims that he did not undertake a "substantial step" toward completing the crime of rape. We find Washington's argument unpersuasive, in large part because the facts here do not escape the scope of *State v. Arave*, 2011 UT 84, 268 P.3d 163.

¶11     In Utah, rape is defined as "sexual intercourse with another person without the victim's consent." Utah Code Ann. § 76-5-402(1) (LexisNexis 2017). And to "attempt" a crime, a person must "intend[] to commit the crime" and must "engage[]

---

4. Washington also contends that defense counsel rendered ineffective assistance "by not arguing consideration of Washington's mental health evaluations in sentencing." However, he has not engaged with this issue in his brief, and thus we do not discuss the matter further. *See State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 ("Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (cleaned up)).

in conduct constituting a *substantial step* toward commission of the crime." *Id.* § 76-4-101(1) (emphasis added).

¶12 Here, intent is clear—while gripping Tiana by the shoulders, Washington looked directly at her and said, "I'm going to make it [i.e., have sex] with you." So, the ultimate question is whether the incident's remaining aspects (Washington's grabbing Tiana's shoulders and sweatshirt, Washington's attempt to throw her on the bed, and Washington's attempt to prevent Tiana's escape through the front door) constitute "substantial step[s] toward commission of the crime." *Id.* We conclude that they do.

¶13 As the district court stated, "conduct constitutes a substantial step if it strongly corroborates the actor's mental state." *Id.* § 76-4-101(2). In other words, a person has committed a "substantial step" when that person takes an action that indicates intent to actually commit the crime. *See State v. Fowers*, 2013 UT App 212, ¶ 6, 309 P.3d 1156. And while a "substantial step" must be "more than mere preparation," *Arave*, 2011 UT 84, ¶ 30 (cleaned up), we agree with the district court's statement that the action need not be "the last act necessary" to commit the crime, *see United States v. Washington*, 653 F.3d 1251, 1264 (10th Cir. 2011) (cleaned up). Instead, it needs to be only "a tangible step toward commission of a crime that transcends intent, yet fails to culminate in its planned accomplishment." *Arave*, 2011 UT 84, ¶ 30 (cleaned up).

¶14 In *Arave*, our supreme court applied these rules and clarified the scope of what constitutes "attempt." In that case, the court determined that a defendant did not "attempt" to commit sodomy on a child when he followed a young boy, blocked the boy's skateboarding path, and proposed to perform oral sex, but did nothing to stop the boy from leaving after the boy refused. *Id.* ¶¶ 1, 3–4. Rather, the court expressly explained that, to rise to the level of "attempt," the defendant would have had to have

gone beyond solicitation by engaging in some "additional preventive action" such as blocking the boy's escape, taking his skateboard, or otherwise trying to restrain him. *Id.* ¶ 32.

¶15 Washington argues that *Arave* does not apply in this case because "mere intent to violate a criminal statute is not punishable as an attempt" and because solicitation cannot turn into rape merely owing to the fact that Washington tried to prevent Tiana's escape. But Washington's argument is misplaced. As noted above, Washington's intent was clear, and Washington's sexual solicitation (offering to pay for sex) stands alone as an independent crime. *See* Utah Code Ann. § 76-10-1313(1)(a) (LexisNexis Supp. 2021). We must determine whether Washington's actions, outside of his sexual solicitation and his stated intent, rise to the level of "substantial step[s]" toward commission of the rape.

¶16 In our view, various features present in this case distinguish it from *Arave* in exactly the ways the supreme court explained would be significant. In *Arave*, following his solicitation (the commission of which the defendant conceded) and following the boy's rejection, the defendant offered a few parting words and did nothing to prevent the boy from leaving. *Arave*, 2011 UT 84, ¶¶ 2, 4. Without "additional preventive action" to keep the boy from leaving, the defendant had taken no steps toward committing the crime of sodomy on a child. *Id.* ¶¶ 1, 32. Like the defendant in *Arave*, Washington solicited sex. *See supra* ¶ 3. And like the defendant in *Arave*, Washington made his intent clear—he explicitly stated that he wanted to have sex with Tiana. *See supra* ¶¶ 3–4. But unlike the defendant in *Arave*, when Washington's target rejected him, he did not stop. Instead he (1) gripped Tiana's shoulders and refused to let go, (2) attempted to throw her on the bed, (3) grasped her sweatshirt so tightly that it came off as she struggled to escape, and (4) ran to the front door and attempted to prevent her from leaving the house. All these actions represent steps beyond those taken by

the defendant in *Arave*, and each of them represent "additional preventive action[s]," *see Arave*, 2011 UT 84, ¶ 32, that, when viewed in light of his intent to have sex with Tiana, plainly constitute "substantial step[s]" toward commission of the rape.

¶17 Indeed, viewed "in the light most favorable to the [district] court's findings," *see State v. Jack*, 2018 UT App 18, n.2, 414 P.3d 1063, we conclude that the district court's judgment is not "against the clear weight of the evidence," and Washington has not raised in us "a definite and firm conviction that a mistake has been made," *see State v. Holland*, 2018 UT App 203, ¶ 9, 437 P.3d 501 (cleaned up). Accordingly, we sustain the district court's judgment.

## II. Stipulation to Competency

¶18 Second, Washington contends that defense counsel provided ineffective assistance by stipulating to his competency based on one of the competency reports. To prevail on such a claim, Washington must show both "that (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense." *See State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350 (cleaned up). However, because Washington has failed to provide the competency review hearing transcript as part of the record, and because Washington has not requested a remand under rule 23B to supplement the record, *see* Utah R. App. P. 23B, Washington is unable to meet his appellate burden of persuasion with regard to the test's first prong—that counsel rendered deficient performance.

¶19 To evaluate counsel's performance, we must "consider[] all the circumstances" and review "counsel's acts or omissions" and assess whether they "were objectively unreasonable." *Scott*, 2020 UT 13, ¶ 36. But, without the transcript of the competency review hearing, we cannot consider the circumstances, review counsel's acts or omissions, or determine whether, counsel's acts

or omissions fell within the acceptable range of reasonability. *See id.* In other words, we cannot evaluate counsel's performance in this instance, let alone determine whether it was deficient or whether the performance at that hearing—including any resulting representations, stipulations, and waivers—fell below an objective standard of reasonableness.

¶20    Moreover, "when an appellant fails to provide an adequate record on appeal, this court presumes the regularity of the proceedings below," and we presume the proceedings "support the action of the [district] court." *State v. Case*, 2020 UT App 81, ¶ 19, 467 P.3d 893 (cleaned up). And, specifically regarding effective assistance, "we presume that an attorney performed in an objectively reasonable manner." *State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871 (cleaned up). So here—having no way to know anything detailed about what the court said, what the defendant said, what counsel said, and the discussions surrounding the stipulation and other aspects of the critical proceeding—we cannot speculate that the proceedings were anything other than "regular[]," *see Case*, 2020 UT App 81, ¶ 19, or that counsel's performance was anything other than "objectively reasonable," *see Ray*, 2020 UT 12, ¶ 34 (cleaned up).[5]

---

5. Attempting to side step his burden, Washington appears to argue that effective counsel can never stipulate to competency in the face of conflicting competency reports. However, Washington has presented no authority to support this point, and we are not prepared to hold that no reasonable attorney, regardless of the circumstances, could ever stipulate to competency given conflicting reports. *Cf. State v. Galindo*, 2019 UT App 171, ¶¶ 9–10, 452 P.3d 519 (applying the ineffective assistance of counsel analysis to a stipulation of competency); *Burns v. Summerhays*, 927 P.2d 197, 199–200 (Utah Ct. App. 1996) ("In this case, in which the appellant has failed to provide

(continued…)

CONCLUSION

¶21 Washington's actions—grabbing and holding Tiana's shoulders and sweatshirt, attempting to throw her on a bed, and attempting to prevent her escape—all in the context of his contemporaneous statement of intent, provide supporting evidence for the substantial step element of attempted rape; thus, the district court committed no error in denying Washington's motion for a directed verdict or in finding him guilty after trial. Further, without the transcript of the competency review hearing, Washington cannot show ineffective assistance. Accordingly, we affirm.

────────────

(…continued)

adequate legal analysis and legal authority in support of his claims, appellant's assertions do not permit appellate review."). Alternatively, Washington also appears as if he is trying to avoid this burden by reframing his ineffective assistance argument as a constitutional due process error that requires reversal per se, regardless of any showing. But Washington has not raised a preserved constitutional claim, nor has he raised a plain error argument relating to an unpreserved constitutional issue. *Cf. State v. Brown*, 856 P.2d 358, 359 (Utah Ct. App. 1993) ("As a general rule, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal . . . ."). Washington has raised an ineffective assistance of counsel claim. And for such a claim the standard is clear: Washington must show that "his counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350 (cleaned up). And as explained, Washington cannot make the necessary showing on this record.