**2026 UT App 27**

## THE UTAH COURT OF APPEALS

TERRY WAYNE WASHINGTON,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20230553-CA
Filed February 20, 2026

Fifth District Court, Cedar City Department
The Honorable Ann Marie McIff Allen
No. 220500108

Benjamin Miller and Debra M. Nelson,
Attorneys for Appellant

Derek E. Brown and Tanner R. Hafen,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1     Terry Washington was convicted of attempted rape and sexual solicitation, and this court affirmed his convictions on direct appeal. Washington later filed a pro se petition for postconviction relief in which he appeared to raise three claims. After conducting an initial review, the district court summarily dismissed two of the claims on the basis that they were procedurally barred. Washington later filed a motion requesting the appointment of counsel, while the State filed a motion for summary judgment on the third claim. The district court subsequently denied Washington's request for counsel and granted the State's motion for summary judgment on the remaining claim.

¶2      Washington now raises four issues on appeal.

- First, Washington challenges the court's summary dismissal of his first two claims.

- Second, Washington challenges the court's denial of his request for the appointment of counsel.

- Third, Washington challenges the court's decision granting summary judgment on his third claim.

- Finally, Washington argues that the court erred by failing to address a fourth claim that, in his view, he had raised in the memorandum he filed in support of his postconviction petition.

¶3      With respect to Washington's first issue, the State concedes that the district court erred in summarily dismissing his first two claims. That concession is well taken, so we reverse that dismissal and remand for further proceedings. For the reasons set forth below, however, we see no reversible error with respect to the remaining issues, so we affirm in all other respects.

BACKGROUND[1]

*Charges and Trial*

¶4      Washington was charged by information with one count of attempted rape and one count of sexual solicitation.

---

1. The facts that led to Washington's criminal convictions are set forth in *State v. Washington*, 2021 UT App 114, ¶¶ 2–7, 501 P.3d 1160, and we need not recount them here. We'll instead limit our discussion to the procedural history relevant to the issues before us in this appeal.

¶5 Before trial, Washington's counsel (Trial Counsel) raised some concerns about Washington's competency, and the district court ordered a competency evaluation. Two experts evaluated Washington, and they came to different conclusions about whether Washington was competent. At a subsequent competency review hearing, Trial Counsel acknowledged this difference in opinion. Trial Counsel then asked the court "to accept the recommendation" from the expert who had deemed Washington competent and thus rule that Washington was indeed competent to proceed. At that point, the court addressed Washington personally and asked him if he felt competent, to which Washington responded, "Yes, sir, I'd like to have a bench trial."[2] When the court asked Washington if he understood the charges, Washington said, "Well, I do now. . . . Yes, sir." The court accepted the stipulation from Trial Counsel about Washington's competency, adopted the conclusions from the expert who concluded that Washington was competent, and set a date for a bench trial.

¶6 Five days before the scheduled trial, the State moved to amend the information. The original information had erroneously stated that attempted rape was a second-degree felony, and the amended information corrected this by designating it as a first-degree felony.[3] One day before trial, the State filed a second amended information that added the specific subsection of the

---

2. As indicated in the caption to this opinion, the judge who presided over the postconviction case was Judge Ann Marie McIff Allen. The judge who presided over the criminal case was Judge Keith C. Barnes, which explains Washington's use of the term "sir" when addressing the judge at trial.

3. Attempted rape is classified as a "first degree felony punishable by imprisonment for an indeterminate term of not fewer than three years and which may be for life." Utah Code § 76-4-102(1)(c)(iii) (2018).

statute for the sexual solicitation charge. The second amended information read as follows:

> The State of Utah, through the undersigned prosecutor, alleges TERRY WAYNE WASHINGTON committed the following criminal offense(s) in Iron County Utah:
>
> COUNT 1: ATTEMPTED RAPE, a First Degree Felony, in violation of 76-5-402, in that TERRY WAYNE WASHINGTON, on or about October 21, 2018, did attempt to have sexual intercourse with another person without the victim's consent.
>
> *The State hereby gives notice to the defendant that if convicted of count 1, the statutory term of imprisonment is not less than 5 years and which may be for life. Imprisonment is mandatory in accordance with UCS, Section 76-3-406*[.][4]
>
> COUNT 2: SEXUAL SOLICITATION, a Class A Misdemeanor, in violation of 76-10-1313(1)(b), in that TERRY WAYNE WASHINGTON, on or about October 21, 2018, did (a) offer or agree to commit any sexual activity with another person for a fee; or (b) pay or offer or agree to pay another person to commit any sexual activity for a fee; or (c) with intent to engage in sexual activity for a fee or the functional equivalent of a fee or to pay another individual to commit any sexual activity for a fee or the functional equivalent of a fee engage in, offer or agree to engage in, or request or direct another to

---

4. This paragraph was incorrect. Under Utah Code section 76-4-102(1)(c)(iii) (2018), this offense was punishable by a mandatory sentence of three years to life. The State brought this error to the attention of the court at sentencing.

engage in any of the following acts: (i) exposure of an individual's genitals, the buttocks, the anus, the pubic area, or the female breast below the top of the areola; (ii) masturbation; (iii) touching of an individual's genitals, the buttocks, the anus, the pubic area, or the female breast; or (iv) any act of lewdness.

(Italics in original.)

¶7 The day of trial, the parties had a discussion on the record about the amended informations. During this discussion, Trial Counsel informed the court that he had seen a copy of the second amended information and he didn't "have any objections" to it. He also said that he understood "that the second-degree felony of rape is a charge that doesn't technically exist" and that he "explained that to [Washington]." The district court agreed with Trial Counsel that the original information's reference to attempted rape as a second-degree felony "was just an oversight," and the court further agreed "that the elements of the . . . alleged crimes . . . did not change, other than the fact that it's a first-degree felony, . . . but there was information given that there is a minimum mandatory prison sentence."

¶8 The court then proceeded with the bench trial. The State called seven witnesses, including the victim and various other witnesses who had interacted with her after the incidents at issue. After the State rested, Washington moved for a directed verdict, which the court denied. Washington did not testify and presented no evidence.

¶9 The district court found Washington guilty on both counts, after which it sentenced him to three years to life in prison on his attempted rape conviction, with a concurrent one-year jail sentence for the solicitation conviction.

*Direct Appeal*

¶10 With the assistance of new counsel (Appellate Counsel), Washington timely appealed his convictions, arguing that (1) there was insufficient evidence to convict him on the attempted rape charge and (2) Trial Counsel had provided ineffective assistance by stipulating to his competency. This court affirmed Washington's convictions, holding that the evidence was sufficient and that Washington had failed to establish ineffective assistance of counsel. *See State v. Washington*, 2021 UT App 114, ¶ 21, 501 P.3d 1160. Regarding the latter issue, we held that because Washington had "failed to provide the competency review hearing transcript as part of the record, and because Washington [had] not requested a remand under rule 23B to supplement the record," Washington was "unable to meet his appellate burden of persuasion" that Trial Counsel "rendered deficient performance." *Id.* ¶ 18.

*Postconviction Proceedings*

¶11 Washington later filed a pro se petition for postconviction relief under the Postconviction Remedies Act (the PCRA). *See* Utah Code §§ 78B-9-101 to -503.

¶12 Washington filled out a preprinted form for his postconviction petition. In one part that is relevant to this appeal, the form gave the following instructions to petitioners: "State concisely every ground on which you claim you are entitled to post-conviction relief. Summarize briefly the facts supporting each ground. If necessary, you may attach additional pages stating additional grounds and facts supporting same." Continuing, it provided the following guidance:

> GROUNDS: Describe your claims without citing case law or making argument. (e.g., Ground One: denial of effective assistance of counsel) followed by concise summaries of the alleged facts under each title. You may attach additional paperwork if

required. Separate each ground with new heading information (Ground One, Ground Two, etc.).

The form then included two pages of lined space on which a petitioner could state his or her ground(s) for relief.

¶13    On the first page, Washington handwrote the following, which we reprint here in full and verbatim:

Ground One: Defective Information

Supporting Fact: The information filed in the instant case omitted an essential element of the offense charged. See Memorandum in Support of 65C

Ground Two: Ineffective Assistance of Trial Counsel

Supporting Fact: Trial Counsel failed to object to the omission of an essential element of the offense charged. See Memorandum in Support of 65C

Ground Three: Ineffective Assistance of Appellate Counsel

Supporting Fact: Appellate Counsel failed to raise the Defective Information and Trial Counsel's I.A.C. on this issue. See Memorandum in Support of 65C

These three listed grounds took up about half of a page, thus leaving about a page and a half of blank space where additional grounds could have been listed if needed.

¶14    Washington also filed a handwritten supporting memorandum contemporaneously with his postconviction petition. The supporting memorandum was organized into five sections, which were set off with the following as underlined and centered headings: (i) "Statement of the Case," (ii) "Statement of

the Facts," (iii) "Summary of Arguments," (iv) "Argument," and (v) "Conclusion."

¶15    Under the Summary of Arguments heading, Washington spent two paragraphs addressing the first ground that he had identified in his petition—namely, that the "[i]nformation filed in the instant case [was] facially invalid." The next paragraph (which was the final paragraph in the Summary of Arguments) moved on to his claims of ineffective assistance. It read as follows (again reprinted verbatim):

> Petitioner was denied his constitutional right to the assistance of counsel at trial and on direct appeal. "Two evaluations" were conducted on petitioner to determine his competency to stand trial, one says you're competent, one says you're not. Trial counsel was ineffective for stipulating to the evaluation that stated petitioner <u>was</u> competent for trial . . . The issue of petitioner's competency should have been adjudicated by the court as set forth under statute. A hearing was required to safeguard petitioner's rights regarding his competency or lack thereof, to enable the court to decide the issue, not by stipulation. Thus, trial counsel was ineffective and the trial court abused its discretion. Appellate counsel was also ineffective for failure to provide the Appellate Court with sufficient evidence to address the errors on direct appeal.

¶16    Washington's memorandum then moved on to the Argument section. The Argument section comprised 12 pages of handwritten text, and it contained detailed legal discussion that was supported by citation to relevant authorities and discussion of how those authorities supported his claims.[5] It was organized

---

5. Indeed, the citations and even the use of introductory signals were generally correct under standard legal citation norms.

in three sections, each of which was set off by a Roman numeral and an indented and all caps heading. Those headings were:

I. THE INFORMATION FILED IN THIS CASE IS DEFECTIVE: DUE TO THE OMISSION OF AN ESSENTIAL ELEMENT OF THE OFFENSE

. . . .

II. MR. WASHINGTON DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

. . . .

III. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

¶17 Under headings II and III, Washington did not make any assertion about either Trial Counsel or Appellate Counsel providing ineffective assistance relating to his competency. Instead, and consistent with the three grounds for relief that were identified in the petition, these sections only contained discussion of Washington's claims relating to alleged defects in the information. In section II, Washington asserted that Trial Counsel should have argued that the information was inadequate because it did not cite the statute governing attempted offenses or set forth the elements of an attempted offense.[6] And in section III, Washington asserted that Appellate Counsel provided ineffective

---

6. Washington raised similar concerns about each of the three informations that were filed in the case, and the ensuing arguments (both below and on appeal) and rulings have often blurred the distinction between them. But the alleged defects existed in each information, and our resolution of the related issue raised on appeal would apply with equal force to all three. For ease, we'll use the singular "information" moving forward.

assistance on appeal by not raising Trial Counsel's alleged ineffectiveness concerning defects in the information.

¶18   After Washington filed his petition, and before the State had been served with it, the district court issued what it titled an "Order of Summary Dismissal of Claims." The court stated that it was conducting an initial review pursuant to rule 65C(b) of the Utah Rules of Civil Procedure. It then stated that pursuant to Utah Code section 78B-9-106(1)(c), Washington was "not eligible for relief" on his first two claims because they "could have been but were not raised in the trial court, at trial, or on appeal." After dismissing those claims, the district court held that Washington could "proceed on the remaining claim" set forth in his petition. It accordingly directed the clerk of court to serve a copy of the petition on the State, and it gave the State 30 days "to answer or otherwise respond to the portions of the [p]etition that ha[d] not been summarily dismissed."

¶19   The State subsequently filed a motion to transfer the postconviction case to the judge who had sentenced Washington in the criminal case. *See* Utah R. Civ. P. 65C(g). At the hearing on that motion, Washington appeared by video from the jail. When the court asked Washington if he "want[ed] to be heard on" this issue, Washington did not appear to understand the import of the court's question and began discussing the substance of his underlying charges. The court interrupted him and said, "We're not discussing the underlying issues today. The only thing we're discussing is which judge is going to be assigned to the case. That's it." Washington replied, "Well, I'm going to need a lawyer. I'm going to need a representative to . . . represent me on this case because I don't understand . . . what you're saying." The court then told Washington, "Certainly, . . . you are entitled to have an attorney represent you. . . . [A]nd you can certainly hire an attorney of your choice. The question would be whether you would be entitled for government-funded indigency-appointed counsel."

¶20    The court asked the State what its position was on Washington's request for counsel. The State responded that Washington "is absolutely entitled to a court-appointed counsel for his . . . original criminal proceedings and his direct appeal. But that same right does not exist for postconviction proceedings like this one." The State told the court that rule 65C(j) "does give [the court] the prerogative to appoint . . . Washington pro bono counsel," and it further explained that rule 65C(j) sets forth the applicable guidelines for making that decision. But the State then told the court that it had "no position on whether . . . Washington should be appointed counsel." After the State concluded, the court informed Washington that if he "would like to make a request under [r]ule 65C for the appointment of counsel," he must "file that with the appropriate documentation."

¶21    Washington soon filed a written motion requesting the appointment of counsel, asserting there, in full, that he was "incompetent to proceed pro se because of his poverty and because this is a complex legal issue beyond [his] expertise in self-representation." Washington subsequently reiterated his request for the appointment of counsel in various other filings, including a pleading relating to his request for leave to file another appeal, his response to the State's motion for summary judgment, and a renewed motion for the appointment of counsel. In the course of these filings, Washington asserted that he couldn't "afford an attorney" because he had "$5,000 in [his] inmate [ac]count" and a job in the prison with a monthly pay of only $160; that "some of [his] factual allegations" may "require an evidentiary hearing"; that this "is a complicated legal matter which is beyond his expertise to properly litigate"; and that "he falls under [the] A.D.A." because "he is [hard] of hearing" and wears "two hearing aids." Washington also referred the court to Utah Code section 78B-9-109(2), which, in his telling, required the court to "consider whether the petition . . . contains factual allegations that will require an evidentiary hearing and . . . whether the petition involves compl[ica]ted issues of law, or facts that require the assistance of counsel for proper adjudication" in determining whether to appoint counsel.

¶22 Before the court ruled on Washington's request for the appointment of counsel, the State filed a motion for summary judgment on Washington's third claim—which, as noted, asserted that he had received ineffective assistance from Appellate Counsel. There, the State argued that: (1) there were "no genuine issues of disputed material facts"; (2) the information was adequate as a matter of law, which meant that Washington could not show deficient performance because Appellate Counsel did not overlook a meritorious issue; and (3) even if the information was inadequate in some respect, Washington could not show prejudice because Washington "mounted a vigorous defense against the charge of attempted rape" but was still ultimately convicted.

¶23 The district court subsequently issued rulings denying Washington's motion for the appointment of counsel and granting the State's motion for summary judgment. In its ruling denying Washington's request for the appointment of counsel, the court noted that the appointment of counsel is "discretionary under Utah Rule of Civil Procedure 65C(j)" but that the rule requires the court to "consider whether the petition or the appeal contains factual allegations that will require an evidentiary hearing and whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." The court then stated that "[a]fter reviewing [Washington's] remaining claim in his petition, and considering the factors outlined in rule 65C(j)," it had decided "not to appoint counsel in this case" because Washington's allegations were "not legally or factually complex, nor [did] they require an evidentiary hearing for proper adjudication."

¶24 At the outset of its ruling granting the State's motion for summary judgment, the court observed that Washington had raised three claims in his postconviction petition and that it had "summarily dismissed his first two claims" pursuant to "rule 65C(h) of the Utah Rules of Civil Procedure" "because they could have been but were not raised in the trial court, at trial, or on appeal." With respect to "Washington's third claim," the court

then agreed with the State's assertion that any objection to the "adequacy" of the information "would have been meritless." This was so, in the court's view, because the information "included the statutory definition of rape" and "made clear that Washington was being charged with the derivative offense of attempted rape." While acknowledging that the information did not contain the statutory citation or elements of an attempted offense, the court concluded that "Washington clearly knew that he was being charged with attempted rape." Here, the court observed that Washington had prepared a defense to the *attempt* charge and "argued about it extensively" at trial. The court accordingly concluded that Washington had not shown that he received ineffective assistance, and it thus dismissed this claim.

¶25 Washington appealed that dismissal, after which this court appointed counsel to represent Washington in this appeal.

ISSUES AND STANDARDS OF REVIEW

¶26 On appeal, Washington first argues that the district court erred by failing to give him notice and an opportunity to be heard before summarily dismissing his first two claims. "We review for correctness the district court's dismissal of a petition for postconviction relief." *Monson v. Salt Lake City*, 2015 UT App 136, ¶ 5, 351 P.3d 821.

¶27 Second, Washington argues that the district court abused its discretion by denying his request for counsel. "We review [a] district court's denial of a motion to appoint counsel under [the PCRA] for an abuse of discretion." *Zaragoza v. State*, 2017 UT App 215, ¶ 14, 407 P.3d 1122.

¶28 Third, Washington argues that the district court erred by granting the State's motion for summary judgment. "We review a district court's summary judgment ruling for correctness, granting no deference to its legal conclusions, and consider whether it correctly concluded that no genuine issue of material

fact existed." *Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶ 46, 361 P.3d 63 (quotation simplified).

¶29    Finally, Washington argues that the district court erred by failing to address what Washington asserts was a fourth claim that he raised in his postconviction petition: namely, whether he received ineffective assistance from Appellate Counsel relating to the competency issue. As discussed below, we conclude that this issue was not properly pleaded, so the court's decision to grant summary judgment without ruling on it is reviewed for correctness. *See Rokovitz v. Manley Construction LLC*, 2025 UT App 3, ¶ 20, 563 P.3d 433.

ANALYSIS

I. Summary Dismissal

¶30    Washington first argues that the district court erred by summarily dismissing his first two claims. The State agrees that the court did so in error. This concession is well taken.

¶31    Rule 65C(h) of the Utah Rules of Civil Procedure is titled "Summary dismissal of claims." That rule requires a district court to conduct an initial review of a postconviction petition and then summarily dismiss a claim if either (1) "it is apparent to the court that" it "has been adjudicated in a prior proceeding" or (2) it "appears frivolous on its face." Utah R. Civ. P. 65C(h)(1). For purposes of this rule, a

> claim is frivolous on its face when, based solely on the allegations contained in the pleadings and attachments, it appears that: (A) the facts alleged do not support a claim for relief as a matter of law; (B) the claim has no arguable basis in fact; or (C) the claim challenges the sentence only and the sentence has expired prior to the filing of the petition.

*Id.* R. 65C(h)(2); *see also Archuleta v. Galetka*, 2011 UT 73, ¶ 49, 267 P.3d 232 (noting that rule 65C(h) serves as an "earl[y] screening mechanism that allows judges to weed out frivolous post-conviction claims that have a low likelihood of success").

¶32 The court's ruling was titled "Order of Summary Dismissal of Claims." In that ruling, the court stated that pursuant to rule 65C(b) of the Utah Rules of Civil Procedure and Utah Code section 78B-9-106(1)(c), it was dismissing Washington's first two claims because they "could have been but were not raised in the trial court, at trial, or on appeal." In its subsequent summary judgment ruling (which, as noted, dismissed the third claim), the court observed that it had previously "summarily dismissed" the first two claims pursuant to "rule 65C(h) of the Utah Rules of Civil Procedure."

¶33 In light of all this, we see two problems with the court's ruling.

¶34 First, although the court initially referred to rule 65C(b), that rule does not set forth the procedures for the summary review or dismissal of a postconviction claim. Rather, those procedures are set forth in rule 65C(h), which seems to have been the point of the court's subsequent clarification. But to the extent that the court's summary dismissal was indeed entered pursuant to rule 65C(h), the dismissal was improper because it was based on a ground that's not permitted by that rule. As noted, rule 65C(h) allows for summary dismissal if (1) it's apparent that a claim "has been adjudicated in a prior proceeding" or (2) a claim "appears frivolous on its face." Utah R. Civ. P. 65C(h)(1). But here, the court's summary dismissal was predicated on its conclusion that the claims *could have* been raised previously but were not. This ruling therefore fell outside the scope of rule 65C(h).

¶35 Second, we acknowledge that in the course of conducting the initial summary review, it may become apparent to a district court that some claims may be procedurally barred because they could have been raised earlier but were not. *See* Utah Code § 78B-

9-106(1)(c) (stating that a petitioner "is not eligible" for postconviction relief on "any ground" that "could have been but was not raised in the trial court, at trial, or on appeal"). We further note that under Utah Code section 78B-9-106(2)(b), "[a]ny court may raise a procedural bar . . . on the court's own motion." And this may well have been what the court was doing here, albeit under the (incorrect) auspices of the summary review process set forth in rule 65C(h).

¶36    But by statute, before dismissing a claim "on the court's own motion," the court must "give[] the parties notice and an opportunity to be heard." *Id.* § 78B-9-106(2)(b); *see also Bevan v. State*, 2018 UT App 237, ¶ 5, 434 P.3d 516 (holding that the district court dismissed the petitioner's postconviction petition "as procedurally barred without providing the required notice and opportunity to be heard" and that this "constitute[d] manifest error requiring reversal"). Thus, if the district court meant to invoke this authority (as opposed to the summary dismissal authority set forth in rule 65C(h)), the court erred by failing to give Washington notice and an opportunity to be heard about the potential impact of the procedural bar set forth in Utah Code section 78B-9-106(1)(c).

¶37    For either reason, we conclude that the court erred by dismissing the first two claims. We accordingly reverse that dismissal and remand for further proceedings on those claims.

## II. Appointment of Counsel

¶38    Washington next argues that the district court abused its discretion when it denied his request for the appointment of counsel. We disagree.

¶39    "Unless a defendant has been sentenced to death, there is no statutory or constitutional right to counsel in a post-conviction proceeding." *Tillman v. State*, 2012 UT App 289, ¶ 22, 288 P.3d 318 (quotation simplified). Instead, the PCRA "leaves the appointment of counsel in a petition for post-conviction relief . . .

to the court's discretion." *Id.* (quotation simplified). Our courts "have recognized that a postconviction court enjoys wide latitude regarding whether to appoint counsel" in a postconviction case. *Carrell v. State*, 2023 UT App 93, ¶ 36, 536 P.3d 653 (quotation simplified). "Indeed, in this context, our supreme court has instructed that a district court abuses its discretion only if its decision was beyond the limits of reasonability, an event which occurs when the district court has taken actions that are inherently unfair or that no reasonable person would take." *Zaragoza v. State*, 2017 UT App 215, ¶ 17, 407 P.3d 1122 (quotation simplified). Thus, as long as the district court "considers the factors that [it is] require[d] . . . to consider," the court "enjoys wide discretion over the ultimate decision about whether to appoint pro bono counsel in post-conviction cases." *Id.*

¶40    Here, Washington argues that the district court failed to consider certain factors that, in his view, it was required to consider. When a postconviction petitioner requests the appointment of counsel, two sources of authority set out the factors that the court either must or instead may consider. First, rule 65C(j) of the Utah Rules of Civil Procedure states that the court "*shall* consider" (1) "whether the petition . . . contains factual allegations that will require an evidentiary hearing" and (2) "whether the petition involves complicated issues of law or fact that require the assistance of counsel for proper adjudication." (Emphasis added.) Second, Utah Code section 78B-9-109(2) states that the court "*may* consider" a series of enumerated factors. (Emphasis added.) In addition to listing the same two factors listed in rule 65C(j), *see* Utah Code § 78B-9-109(2)(b), (d), this statute provides that courts "may consider" "whether the petitioner is incarcerated," "the likelihood that an investigation will be necessary," and "any other factor relevant to the particular case," *id.* § 78B-9-109(2)(a), (c), (e).

¶41    As discussed above, when the district court denied Washington's request for the appointment of counsel, it expressly considered the two factors set forth in rule 65C(j), but it did not then engage in any further analysis. Washington now asserts that

this was error. In his view, the court was required to consider the additional factors set forth in Utah Code section 78B-9-109(2).

¶42    We disagree, and we do so because of the plain language of the controlling authorities. Again, the two factors set forth in rule 65C(j) are introduced by the term "shall." Utah cases have commonly concluded that the word "shall" refers to something that is mandatory. *See State v. Blake*, 2025 UT 21, ¶ 37, -- P.3d -- (noting that "'[s]hall' is presumed to indicate a mandatory act"); *State v. Grover*, 2022 UT App 48, ¶ 37, 509 P.3d 223 (concluding that the word "shall" within a rule of judicial procedure created a "mandatory" requirement); *Paar v. Stubbs*, 2005 UT App 310, ¶ 7, 117 P.3d 1079 (noting that "'[s]hall' is commonly understood to create a mandatory condition"); *see also* Utah Code § 68-3-12(j) (noting that for purposes of interpreting a provision in the Utah Code, "'[s]hall' means that an action is required or mandatory").

¶43    By contrast, the additional factors set out in section 78B-9-109(2) are introduced with the word "may." Utah courts have commonly concluded the word "may" refers to something that is discretionary. *See, e.g.*, *Carrell*, 2023 UT App 93, ¶ 36 ("The plain, ordinary, and accepted meaning of the word *may* is permissive or discretionary, generally indicating that an individual is either permitted or has a possibility to do something." (emphasis in original, quotation otherwise simplified)); *North Fork Meadows Owners Ass'n v. Dove*, 2023 UT App 107, ¶ 19, 537 P.3d 258 ("The word 'may' is commonly understood as being one that grants discretionary power to a court." (quotation simplified)); *Mota v. Mota*, 2016 UT App 201, ¶ 6, 382 P.3d 1080 (noting that "a statute's use of the word 'may' indicates a court's discretionary power" and signals that the "statute is permissive"); *see also* Utah Code § 68-3-12(g) (noting that for purposes of interpreting a provision in the Utah Code, "'[m]ay' means that an action is authorized or permissive").

¶44    It is "well established that the form of the verb used in a statute, i.e., something 'may,' 'shall' or 'must' be done, is the single most important textual consideration determining whether

a statute is mandatory or directory."[7] *In re M.C.*, 940 P.2d 1229, 1236 (Utah Ct. App. 1997) (quotation simplified). Here, on the plain language of the controlling authorities, we think it's clear enough that when a postconviction petitioner requests counsel, (1) the district court is *required* to consider the two factors set forth in rule 65C(j) and (2) the court is also *permitted* to consider the additional factors set forth in Utah Code section 78B-9-109(2).

¶45   Washington nevertheless pushes back on two fronts, but we find neither of them persuasive.

¶46   First, Washington claims that even with the language cited above, our decision in *Twitchell v. Twitchell*, 2022 UT App 49, 509 P.3d 806, stands for the proposition that a district court must consider additional factors if a petitioner puts forth "significant evidence" about them. But Washington's argument is at odds with the particular circumstances that trigger the *Twitchell* rule.

¶47   In *Twitchell*, we reviewed a child custody determination that had been made at the close of a divorce trial. *See id.* ¶ 1. One of the statutes that controlled that analysis stated, "In determining any form of custody and parent-time under [this statute], the court *shall* consider the best interest of the child and *may* consider among other factors the court finds relevant, the following [factors] for each parent," after which it set out a list of additional factors. Utah Code § 30-3-10(2) (2019) (emphases added).[8] On appeal, the father claimed that the district court had abused its discretion by "failing to adequately consider" some of the additional factors that were listed after the statutory "may."

---

7. While some of the authorities we've cited speak of the ordinary meaning of terms such as "shall" and "may" in the context of statutes, we see no reason to conclude that the interpretive rules applicable to these terms are different for rules. *See State v. Grover*, 2022 UT App 48, ¶ 37, 509 P.3d 223.

8. This statute has since been amended and renumbered as Utah Code section 81-9-204.

*Twitchell*, 2022 UT App 49, ¶¶ 19, 22–23. Reviewing that claim, we concluded that if "significant evidence concerning a particular factor is presented to the district court, findings that omit all discussion of that evidence must be deemed inadequate." *Id.* ¶ 21. We then faulted the district court in that case for not adequately explaining its consideration of those factors. *See id.* ¶ 24.

¶48    Washington asks us to apply the same rule here. But Washington fails to account for the fact that under the broader statutory scheme that governed the *Twitchell* litigation, all of the factors at issue—including those that followed the "may"—were *also* preceded by a mandatory "shall." We recently explained this in *Tilleman v. Tilleman*, 2024 UT App 54, 549 P.3d 65, *cert. denied*, 558 P.3d 85 (Utah 2024). There, we pointed out that in addition to the language from Utah Code section 30-3-10(2) that was cited in *Twitchell* (and which we discussed above), Utah Code section 30-3-10.2(2) (2019) separately stated that when a district court "determin[es] whether the best interest of a child will be served by ordering joint legal custody or joint physical custody or both, the court *shall* consider the custody factors in Section 30-3-10" as well as an additional set of factors.[9] *Id.* ¶ 13 (quoting Utah Code § 30-3-10.2(2) (2019), emphasis added by *Tilleman*). Putting sections 30-3-10(2) and 30-3-10.2(2) together, we held in *Tilleman* that the "shall" that is used in section 30-3-10.2(2) makes it mandatory for a court to consider "all the custody factors" set forth in section 30-3-10(2) "in cases where joint custody is under consideration." *Id.* ¶ 37. Of note, the dispute in *Twitchell* was indeed about a joint custody decision, *see* 2022 UT App 49, ¶¶ 3, 11, 12, which meant that *all* of the factors were, by statute, mandatory.

¶49    As a result, we don't read *Twitchell* as having created a broadly applicable rule under which an otherwise permissive "may" effectively becomes a mandatory "must" whenever a party presents significant evidence about some statutory factor, even if

---

9. Utah Code section 30-3-10.2 has since been amended and renumbered as Utah Code section 81-9-205.

that factor is preceded by a "may." Rather, in its full statutory context, *Twitchell* is properly understood as having created a rule about what kind of findings are required to support a court's assessment of certain factors that are themselves already statutorily required in joint custody determinations. Because there is no similar statutory provision that turns the "may" in Utah Code section 78B-9-109(2) into a mandatory "shall," the *Twitchell* rule simply doesn't apply here. Because of this, we necessarily focus our analysis on the plain language of the statute at issue here. And again, that language indicates that the relevant factors are discretionary.

¶50    Second, Washington appeals to policy, arguing that he needed counsel below because he's "incarcerated, with limited access to legal resources and assistance," and was raising issues that are "factually and legally complex." But we have previously rejected similar arguments when they were raised as challenges to a district court's balancing. In doing so, we've recognized that postconviction petitioners are almost always incarcerated and that ineffective assistance claims are almost always factually and legally complex. *See, e.g.*, *Peterson v. State*, 2024 UT App 159, ¶ 59, 559 P.3d 993; *Carrell*, 2023 UT App 93, ¶ 43. And yet even so, we've pointed out that when the legislature enacted section 78B-9-109(2), it chose to use the permissive word "may," with all of the discretionary meaning that this word normally entails. *See Carrell*, 2023 UT App 93, ¶ 43.

¶51    Because there is no constitutional right to counsel in a postconviction case, the decision about whether, on a broad policy level, it would be a good idea to require district courts to appoint counsel for postconviction petitioners (and, if so, under what circumstances) is one that is up to the legislature to make. It involves systemic considerations that are far beyond our judicial role and are not ours to make. In our view, the statute the legislature has written does not require the appointment of counsel, nor, as relevant here, does it require a court to consider the discretionary factors set forth in section 78B-9-109(2). Because of this, we see no abuse of discretion in the district court's decision

not to account for those factors in its ruling denying Washington's request for the appointment of counsel.

### III. Summary Judgment on Claim Three

¶52 Washington next challenges the district court's decision to grant summary judgment on his third claim. As noted, Washington asserted that he received ineffective assistance from Appellate Counsel because Appellate Counsel did not argue that Trial Counsel provided ineffective assistance by failing to assert that the information was inadequate because it did not cite the statute governing attempted offenses or include the elements of an attempted offense. We affirm the district court's dismissal of this claim.[10]

¶53 "The standard for evaluating whether appellate counsel is ineffective is the same *Strickland* standard used to determine whether trial counsel is ineffective." *Jones v. State*, 2020 UT App 125, ¶ 63, 473 P.3d 1190 (quotation simplified). To prevail on an ineffective assistance of appellate counsel claim based on a failure to raise a claim of ineffective assistance of trial counsel, "a petitioner must show that appellate counsel's failure to raise" the claim "was objectively unreasonable and that there is a reasonable probability that the result of the appeal would have been different

---

10. For readers unaccustomed to the intricacies of the PCRA, this multi-layered framing may seem a touch confusing. The reason for it, however, has to do with the procedural bar set forth in Utah Code section 78B-9-106(1)(c), which, as noted, precludes any claim that "could have been but was not raised in the trial court, at trial, or on appeal." Because a claim of ineffective assistance by trial counsel could have been raised by appellate counsel on appeal, a petitioner who seeks to raise such a claim for the first time in a postconviction petition essentially has to use the appellate counsel claim as the "gateway" to asserting ineffective assistance by trial counsel. *See Ross v. State*, 2012 UT 93, ¶¶ 25, 52, 293 P.3d 345, *abrogated on other grounds by McCloud v. State*, 2021 UT 51, 496 P.3d 179.

if the claim had been raised." *Newton v. State*, 2025 UT 50, ¶ 37, -- P.3d --. In this sense, "because there is no reasonable probability of a different outcome in the direct appeal if the claim of ineffective assistance of trial counsel would have failed, the prejudice prong of ineffective assistance of appellate counsel dovetails with the merits of the underlying ineffectiveness claim." *Id.* (quotation simplified). This is so because "the outcome of the appeal necessarily depends on the outcome of the prejudice analysis for the trial counsel's deficiencies, for the outcome of the direct appeal would only be different if trial counsel's actions resulted in prejudice." *Id.* ¶ 38.

¶54 To show prejudice with respect to an ineffective assistance of trial counsel claim, a defendant must show that the alleged deficient performance "prejudiced the defense." *State v. Schoenenberger*, 2024 UT App 187, ¶ 53, 562 P.3d 1174 (quotation simplified), *cert. denied*, 568 P.3d 261 (Utah 2025). "Prejudice is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, thus undermining confidence in the outcome." *Martin v. State*, 2024 UT App 89, ¶ 18, 552 P.3d 758 (quotation simplified), *cert. denied*, 561 P.3d 692 (Utah 2024). "In this respect, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. The demonstration of prejudice must be a demonstrable reality, not simply a speculative matter." *State v. Bermejo*, 2020 UT App 142, ¶ 23, 476 P.3d 148 (quotation simplified). And "when evaluating prejudice, an appellate court should consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record." *State v. Miller*, 2023 UT App 85, ¶ 27, 535 P.3d 390 (quotation simplified).

¶55 Using this analytical framework, we turn to the merits of the claim that Washington now contends should have been raised at trial (and, by extension, in the direct appeal). As indicated, the claim has to do with alleged deficiencies in the information. Washington points to authority saying that "a defendant is

entitled to have the charges against him defined with such reasonable clarity that he can mount a defense." *State v. Dalton*, 2014 UT App 68, ¶ 44, 331 P.3d 1110 (quotation simplified). He also points to *State v. Taylor*, 2005 UT 40, ¶ 9, 116 P.3d 360, which states that an information must contain a "statement of the elements." Drawing on this authority, Washington asserts that the information was deficient because it didn't include the "proper citation to the relevant code" provision for an attempted offense or "the attempt elements."

¶56 We reject this claim for lack of prejudice. Having reviewed the record from the underlying criminal case, we see no indication that Washington's defense at trial was impaired in any way by these alleged defects. Indeed, the record makes it abundantly clear both that (1) Washington knew that he had been charged with an attempted rape and (2) he was fully prepared to defend against the attempt aspect of the attempted rape charge. To provide just a few examples from the record before us:

- The district court began the bench trial by asking Washington if he "underst[oo]d" "the charges that [had] been charged against [him]," specifically noting that those charges included "one count of attempted rape, a first-degree felony," to which Washington replied, "Yes, sir."

- The State concluded its opening statement by "ask[ing] that the [c]ourt find Mr. Washington guilty of attempted rape and sexual solicitation."

- After the State rested its case, Trial Counsel made a motion for a directed verdict in which he argued that "no evidence was presented that amounts to attempted rape" because, in his view, the State had not presented sufficient evidence showing that the two elements of attempt—intent to commit the underlying crime and a substantial step toward commission of that crime—had been proven.

- During Trial Counsel's closing argument, he devoted a significant amount of time to countering the elements of attempt, primarily highlighting Washington's lack of intent to commit the underlying rape and the absence of a substantial step toward commission of that offense, arguing that there was "doubt . . . whether [Washington] attempted to rape [the victim]."

¶57　The district court later addressed the attempt nature of that charge at some length in its verdict, noting again that Washington was charged with "[a]ttempted rape[] and sexual solicitation" and providing a detailed analysis on the elements of attempt before ruling that "the State [had] met its burden of proof on the charge of attempted rape."

¶58　Washington simply has not persuaded us that, as a result of the alleged deficiencies in the information, he was somehow unaware of the nature of this charge or of the elements of an attempted offense, nor has he persuaded us that his defense at trial would have been any different if the information had included either the statutory citation for an attempted offense or its elements. And in a similar vein, the fact finder in that trial (which, again, was the district court) was likewise aware of the attempt charge, and the court discussed it at length in the verdict. We therefore see no basis for concluding that Washington was prejudiced by this alleged error. Because of this, we see no basis for overturning the district court's decision to grant summary judgment on this claim.

¶59　Finally, we note that in his brief, Washington also points out that the information incorrectly stated that the mandatory minimum prison sentence for attempted rape was five years to life, while the applicable sentence was actually three years to life. But Washington did not assert this additional error in either his postconviction motion or his memorandum, so this appears to be a new claim that's being asserted for the first time in this appeal.

¶60    Regardless, and assuming for argument only that this claim is properly before us, we reject it for lack of prejudice. In his brief, Washington asserts that if he had been informed of the correct sentencing range in the information, this may have "influence[d]" his "decisions and understanding" of the case. But this assertion is cursory. On the basis of the briefing and our own review of the record, we're not persuaded that this particular error influenced Washington's preparation for trial or sentencing, much less the outcome of either proceeding, in any meaningful way. To the extent that this alleged error is properly before us, we reject Washington's claims on it too.[11]

## IV. Alleged Fourth Claim

¶61    Finally, Washington argues that the district court erred by failing to consider what he now asserts was a fourth claim—namely, that he received ineffective assistance because Appellate Counsel did not properly support the argument that Trial Counsel provided ineffective assistance by stipulating to Washington's competency. We see no reversible error, and this is

---

11. As indicated above, the appellate counsel claim acts as a gateway to the trial counsel claim and requires us to look, for prejudice purposes, to the merits of the trial counsel claim. We recognize here that in part I above, we reversed the district court's decision summarily dismissing that very claim. As a result, we acknowledge that our analysis in this part III may well have some bearing on any future analysis of the merits of the first two claims. But in its briefing and arguments, the State has not asserted that if we rule in this manner on the appellate counsel claim, this would allow us to somehow not reverse the summary dismissal of the first two claims. Instead, the State has affirmatively conceded that we should reverse that summary dismissal. And, as noted, that dismissal was not predicated on the court's conclusion about the merits of those claims but was instead predicated on its conclusion about whether Washington previously could have raised them at all.

so because we don't believe that Washington properly pleaded this as a fourth claim in his petition.

¶62 Rule 65C(d) of the Utah Rules of Civil Procedure is introduced by a subheading referring to the "Contents of the Petition," and its text states that the postconviction "petition shall set forth all claims that the petitioner has in relation to the legality of the conviction or sentence." We have thus held that a "petitioner must set out all of his claims relating to the legality of his conviction or sentence in his petition for post-conviction relief and may not bring additional claims in later proceedings." *Gordon v. State*, 2016 UT App 190, ¶ 36, 382 P.3d 1063 (quotation simplified). Rule 65C(f) then separately addresses the "Memorandum of Authorities," and its text allows the petitioner to file "a separate memorandum" in which he or she may "set forth argument or citations or discuss authorities." Utah R. Civ. P. 65C(f).

¶63 Here, Washington wrote his petition on a preprinted form. In the relevant place, that form contained an instruction directing Washington to "[s]tate concisely *every ground* on which" he "claim[ed]" that he was "entitled to post-conviction relief." (Emphasis added.) We don't regard this instruction as being complicated or tied to arcane legal jargon. Its directive seems clear enough, and Washington seems to have understood it. In the space immediately beneath that instruction, Washington listed and separately enumerated three grounds for relief:

>Ground One: Defective Information

>Supporting Fact: The information filed in the instant case omitted an essential element of the offense charged. See Memorandum in Support of 65C

>Ground Two: Ineffective Assistance of Trial Counsel

> Supporting Fact: Trial Counsel failed to object to the omission of an essential element of the offense charged. See Memorandum in Support of 65C
>
> Ground Three: Ineffective Assistance of Appellate Counsel
>
> Supporting Fact: Appellate Counsel failed to raise the Defective Information and Trial Counsel's I.A.C. on this issue. See Memorandum in Support of 65C

Given the nature of this dispute on appeal, we think three things are particularly significant from the above. First, there were three listed claims, not four. Second, each of these claims referred to the alleged defects in the information at trial. And third, none of these claims mentioned any problems relating to the competency stipulation.

¶64 Washington employed a similar structure in the memorandum that he filed contemporaneously with his petition. In the Argument section of that memorandum, Washington listed three arguments, each of which was clearly delineated by a Roman numeral heading. Those headings tracked the structure and substance of the three claims that he had listed in his petition. Under each of these headings, Washington included detailed legal arguments that were supported by applicable authorities, and these arguments corresponded to the three claims he had identified—which, again, all turned on alleged defects in the information. Nowhere in these three sections did Washington address a purported fourth claim relating to Trial Counsel's stipulation to his competency.

¶65 In this appeal, however, Washington nevertheless asserts that he did raise this as a fourth claim through the paragraph that he included in the Summary of Arguments section of his memorandum. As noted, however, rule 65C(d) plainly requires a petitioner to "set forth *all* claims that the petitioner has in relation to the legality of the conviction or sentence" in the petition, and

the form that Washington used likewise instructed him to "[s]tate concisely *every ground* on which" he "claim[ed]" that he was "entitled to post-conviction relief." (Emphases added.) Washington simply did not include, in the petition, any assertion that his prior attorneys had provided ineffective assistance relating to the competency issue.

¶66    Washington nevertheless argues that he essentially raised this by incorporation. He points out that the preprinted form stated that, "[i]f necessary," the petitioner could "attach additional pages stating additional grounds and facts supporting same." Washington then argues that the assertions he made in his memorandum fell under the auspices of this provision. We disagree.

¶67    As discussed, rule 65C differentiates between the petition (which is addressed in rule 65C(d)) and the memorandum (which is addressed in rule 65C(f)). This preprinted form doesn't purport to combine the two. Instead, on its face, it allows a petitioner to attach additional pages to the petition.

¶68    And even there, it allows the petitioner to attach additional pages "if necessary." This qualifier suggests that the additional pages can be attached if there is some need to do so, and the most natural implication is that this would occur if the petitioner runs out of space. Otherwise, the phrase "if necessary" would have no meaning. Here, however, there was no such problem. The form provided two pages of lined space on which Washington could state his grounds for relief. The three grounds that Washington listed took up about half of a single page, and Washington then left about a page and a half of blank space. In light of this, it does not seem that Washington was even plausibly invoking this provision when he then filed a separate memorandum, and Washington never said that he thought he was doing so in either his petition or the memorandum itself.

¶69    Moreover, like the petition, the memorandum does not purport to list a potential competency issue as a fourth ground.

Again, the headings tracked the same three-issue structure that Washington put forward in his petition, and none of them addressed either a purported fourth claim or any claim about competency. Consistent with the structure, the arguments that Washington advanced in his Argument section focused on the three claims he had identified in his petition. Again, none of these arguments concerned competency.

¶70 The passage that Washington now points to on appeal came in the Summary of Arguments section. But this was just a single paragraph, it contained no citation to any legal authority, and, again, it was not repeated anywhere else in either the petition or the Argument section of the memorandum. We recognize that "in general, a pro se document is to be liberally construed" and that such a filing is "held to less stringent standards than formal pleadings drafted by lawyers." *McNair v. State*, 2014 UT App 127, ¶ 12, 328 P.3d 874 (quotation simplified). We also recognize that pro se litigants are "entitled to every consideration that may reasonably be indulged." *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (quotation simplified). But even so, "'reasonable' indulgence is not unlimited indulgence." *Id.* And courts must "consider[]" pro se documents "as a whole." *McNair*, 2014 UT App 127, ¶ 14 (quotation simplified).

¶71 Here, we think the operative rule is clear enough. Again, rule 65C(d) requires "all claims that the petitioner has" related to "the legality of the conviction or sentence" to be "set forth" in the "petition," as opposed to the supporting memorandum, and the preprinted form is likewise clear about this requirement. Washington simply did not allege in his petition that he was raising a separate ground relating to Trial Counsel's handling of the competency issue. And even if we were to conclude, by way of reasonable indulgence, that Washington could somehow raise a separate and additional ground in his accompanying memorandum, we believe that he needed to do something in that memorandum to make it clear to the district court that he was intending to raise it as an independent issue. On balance, given (1) the clear and detailed structure he set forth in both the petition

and the memorandum, (2) the detailed arguments Washington made in his Argument section that also tracked the structure of his identified issues, and (3) the silence about any competency issue within either the structural signposts or the Argument section of his memorandum, we don't believe that Washington did enough to raise this as a separate ground when he included a few sentences about it in his Summary of Arguments section. Because of this, we see no error in the district court's failure to rule on it.

## CONCLUSION

¶72    We reverse the district court's dismissal of Washington's first two claims and remand for further proceedings on them. For the reasons set forth above, however, we see no error or abuse of discretion with respect to the other issues raised on appeal, so we affirm the rulings at issue.

———————